## TAYLOR *vs.* BALDWIN and others.

Upon a trial at law, neither the parties to a deed, or their privies, can vary its terms, or show that it was, although absolute upon its face, in fact a mortgage and intended as such.

On most points the rules of evidence are the same in courts of law and equ ty, and the doctrine of both courts is the same, as to the exclusion of parol evidence to contradict or substantially vary the legal import of a written agreement.

Persons who are not parties to a deed or instrument, or privies in estate, may, in case they have an interest in the subject matter, which may be injuriously if not fraudulently affected if the truth can not be shown, prove by parol the true character of the transaction, although the parties and their privies would be estopped from doing so.

The exception in favor of strangers is designed to prevent a fraudulent operation of the instrument upon their rights.

It does not appear to be well settled that in this country, in the absence of any statute upon the subject, one tenant in common can, without any contract, make necessary repairs upon the property, and charge his co-tenants, in an action for the amount. *Per* ALLEN, J.

He can not do this without first requesting his co-tenant to unite with him in making the repairs.

One tenant in common can not be made liable to the others for expensive and valuable improvements, which are not repairs in the strict sense of that term, and not necessary to preserve the premises from dilapidation and ruin, and to save the property, in the absence of an express or implied contract to pay for them.

The parties must rely upon an agreement, if they seek to charge either the person or estate of their co-tenant for expenses of that character.

If advances are made by one tenant in common for the purpose of making permanent improvements upon the property, as a volunteer, and without any request or assent on the part of his co-tenant, or any promise express or implied to repay them, he has no remedy. But if made upon a promise of re-payment, he has the personal responsibility of his co-tenant.

In no case has he any *lien* upon the premises, for such advances, except by express agreement.

Courts of equity have in but few, if any cases, established a *lien* which did not arise out of a contract, or was not established by usage ; unless under peculiar circumstances, and when the party against whom or whose property the lien was established came to the court for relief, and the lien was enforced as a condition to the relief granted. *Per* ALLEN, J

Taylor v. Baldwin.

THIS case came before the court on a motion to confirm the report of the referee and for an order to distribute the surplus moneys arising upon the sale of the Empire House and premises in the city of Syracuse, upon the foreclosure of a mortgage, and upon exceptions to that report by Harvey Baldwin and the widow and heirs at law of J. H. Tomlinson.

*G. F. Comstock*, for Cadwell.

*J. V. L. Pruyn*, for the Albany City Bank.

*H. S. Fuller* and *C. B. Sedgwick*, for H. Baldwin.

*Q. A. Johnson*, for the widow and heirs of J. H. Tomlinson.

ALLEN, J. The moneys which are the subject of this litigation, are the proceeds of the sale of that one-fourth of the premises which formerly belonged to John Thomas, the history of which is somewhat material to a decision of the questions before me. The premises were on the 14th of November 1835 owned by Baldwin, Cadwell, Jackson, Dodge and Comstock, who, on that day, executed to the plaintiff in this action the mortgage upon the foreclosure of which they were sold. After this, Baldwin by a deed with full covenants, (that is, covenants of seisin, against encumbrances and for quiet enjoyment,) conveyed three-twentieths of the premises to Thomas, taking back mortgages for parts of the purchase money, and Jackson conveyed to Thomas another one-tenth of the premises, thus vesting in him one-fourth of the whole. May 5th, 1845, Thomas mortgaged one-half of his interest (six-eighths of the premises) to the Albany City Bank, to secure the payment of $6,500 of a debt then due the bank, which debt still remains unpaid. A short time thereafter, by deed dated May 6th, 1845, Thomas conveyed to Tomlinson one-eighth of the premises, for the consideration, as expressed, of $4,500 and with covenants against his own acts. In 1847 Thomas executed to Tomlinson a quit-claim deed of the entire premises.

Taylor v. Baldwin.

In 1844 Voorhees owned one-half of the premises, and Cadwell and Thomas one-fourth each, and they took down the buildings then on the premises, and during the years 1844 and 1845 erected the Empire block, at a cost of over $60,000. Thomas paid nothing towards the erection, but Cadwell and Tomlinson (the latter being the agent of Voorhees) advanced and made payments as they were required, to an amount exceeding the proportions which would have been paid by Voorhees and Cadwell respectively, and in fact paid Thomas's share, but in unequal proportions; Tomlinson paying much the greatest amount.

Baldwin claimed a part of the surplus moneys arising from the sale of the Thomas quarter, in virtue of his mortgages. The Albany City Bank claimed in virtue of its mortgage. The widow of Tomlinson claimed in right of her dower in the one-fourth, under the grant from Thomas to Tomlinson. The heirs of Tomlinson claimed as owners of the fee at the time of the sale, under the grants to their ancestor, and Cadwell claimed in virtue of an equitable lien for advances made in payment for the erections; insisting, and attempting to prove, that the first deed from Thomas to Tomlinson was intended as and was in fact a mortgage.

The referee held that such deed was a mortgage, and reported that Cadwell was first entitled to be paid the amount of his claim out of the surplus moneys, and that the Albany City Bank was next entitled. These two claims exhaust the fund.

I. I am of the opinion that the referee erred in holding the deed from Thomas to Tomlinson to be a mortgage. *First.* The evidence, if admissible, is in my judgment entirely too slight to warrant the conclusions of the referee in that respect. It was a remark of Tomlinson, made casually and without any design that the evidence discloses, to influence the action of any one, and when accuracy of expression was very probably not cared for, and which may not have been remembered with that accuracy and precision that is desirable when important rights are to be affected by verbal declarations and admissions. It may well be that the precise words stated by the witness were spoken by Tomlinson, without an intent on his part to con-

Taylor *v.* Baldwin.

vey the idea which is now sought to be engrafted upon them, that he had but a mortgage interest in the property. It may have been that he designed merely to say that he had made large advances for Thomas, who had just then failed, and that he had as the best thing he could do, taken this one-eighth of the premises in payment to its value and for the amount expressed in the consideration clause, and he may have used the word "security" instead of "payment" inadvertently; or the witness may have misunderstood or forgotten the precise expression employed on that occasion. If the deed was intended as a mortgage why was it not put in the form of a mortgage? Why were not the accounts settled and security given for the full amount of Tomlinson's advances? And why was not some personal obligation taken from Thomas for the payment of the amount intended to be secured, and some time fixed for its payment? And why was Thomas not called as a witness, to establish a fact so important? It is unsafe to change the character of an instrument by evidence so slight and unsatisfactory. (*Steen* v. *Steen*, 5 *John. Ch.* 1. *Gillespie* v. *Moon*, 2 *Id.* 585. *Lyman* v. *Utica Ins. Co. Id.* 630.) The quit-claim deed of 1847 from Thomas to Tomlinson is no evidence that either the grantor or grantee supposed that Thomas had any interest, equitable or legal, in the one-eighth specifically conveyed in 1845. It embraces the whole premises, and is just as strong evidence that he intended to convey some interest in the three-fourths confessedly owned by Voorhees and Cadwell as in the one-eighth before conveyed to Tomlinson.

But secondly, I am of the opinion that it was not competent to contradict the terms of the deed of May, 1845, and show by parol that it was intended as a mortgage to secure advances made in the course of the erection of the buildings, and that Thomas had before the conveyance in 1847 an equity of redemption in that one-eighth. Cadwell alone seeks to establish this fact. The Albany City Bank claim that their mortgage is upon the other one-eighth owned by Thomas. Baldwin claims that his lien is superior to the claim of Tomlinson and his representatives, whether the instrument was a deed or mortgage.

It was conceded upon the argument that upon a trial at law neither the parties to a deed or their privies could vary its terms and show that it was, although absolute upon its face, in fact a mortgage, and intended as such. This is now too well established to be controverted, whatever doubts may have for a time rested upon the doctrine, in this state. ( *Webb* v. *Rice,* 1 *Hill,* 606; *S. C.* 6 *Id.* 219.) But it was claimed by the counsel for Cadwell, and urged (1) that the rule established at law did not extend to equity, and that a different rule prevailed in the latter court, and (2) that it was confined to parties and privies to the deed, and that strangers were not affected by it.

I. On most points the rules of evidence are the same in courts of law and equity, and the doctrine of both courts is the same as to the exclusion of parol evidence to contradict or substantially vary the legal import of a written agreement. (*Stevens* v. *Cooper,* 1 *John. Ch. Rep.* 425. *Russell* v. *Kinney,* 1 *Sandf. Ch. Rep.* 34, *and cases cited by Asst. V. C. Story's Eq. Jur.* § 1531. *Dwight* v. *Pomeroy,* 17 *Mass. Rep.* 303.) It is true that equity exercises a jurisdiction to qualify, correct and reform deeds and other written instruments in cases of accident, mistake or fraud. These are well known heads of equity jurisdiction, and in its exercise the court necessarily receives parol evidence to establish the accident, mistake or fraud which render its interposition necessary. And in a clear case the court will reform a contract and make it express the clearly established intent of the parties. (*Story's Eq. Jur.* § 1531. *Meads* v. *Lansing, Hopk.* 124. *Webb* v. *Rice, Dwight* v. *Pomeroy, supra. Gres. Eq. Ev.* 205. *Cowen & Hill's Notes, p.* 1434.) In this case there is nothing which, as between the parties to the deed or their privies, would give a court of equity jurisdiction under either of the heads of accident, mistake or fraud. It does not appear, neither is it intimated, that the deed does not express upon its face precisely what it was designed to express, or that either party mistook or was deceived as to the terms or character of the instrument. It is not sought to reform the deed, to make it express the true contract and understanding between the parties.

2. Perhaps Cadwell is not a privy in estate with Thomas, so as to preclude him from inquiring into the true character of the transaction, provided he has an interest in the subject matter, which may be injuriously if not fraudulently affected if the truth can not be shown. His claim is to some extent adverse to Thomas; it is certainly hostile to the claims of Tomlinson under his deed, and to the right of Thomas to convey the premises divested of his lien. To persons thus situated the law has, in certain cases, allowed the right to show by parol the true character of a transaction in which the parties and their privies would have been estopped by their deed or other written instrument. The exception in favor of strangers is to prevent a fraudulent operation of the instrument upon their rights. (*Reading* v. *Weston*, 8 *Conn. Rep.* 121.) This is the extent to which the authorities relied upon by the counsel go; and I have seen none which extends the principle beyond this. (*Overseers of the Poor of New Berlin* v. *Overseers of Norwich*, 10 *John.* 239. *Whitbeck* v. *Whitbeck*, 9 *Cowen*, 266. 3 *Stark. Ev.* 1017.) The question then arises whether Mr. Cadwell is in a situation in which he can be permitted to vary the terms of the deed in question by parol; or in other words, whether if the instrument is allowed to stand as a deed instead of a mortgage, it will operate as a fraud upon his rights; for if so, then it is quite clear that he is not estopped by the deed. I am, however, unable to perceive how he is or can be interested in the question, upon any state of facts now before me. If Thomas, by his deed, is held to have conveyed an absolute interest in the premises, to Tomlinson, then that one-eighth thus conveyed should not be charged with any advances for Thomas in respect to the one-eighth still held by him, made after that time, but should be charged (provided a lien exists in equity, under the circumstances,) for advances made in respect to the part conveyed, and which should have been paid by Tomlinson the grantee. If it was a mortgage and the mortgagee was in possession, and made advances, and paid the proportion of the cost of the erection which was properly chargeable upon the part thus mortgaged, it would be inequitable to displace

Taylor *v.* Baldwin.

his lien and claim and to charge upon that one-eighth the advances made for the mortgagor in respect to another interest in the entire premises. The parties, by the conveyance, manifested a design to separate the interest of Thomas, and so long as Cadwell (if a lien exists at all,) can have the benefit of that lien for any advances made by him in respect to the one-eighth conveyed to Tomlinson, whether the conveyance was a deed or mortgage, it is not easy to see how he is interested in the question now raised, for advances made in respect to the remaining interest of Thomas. Cadwell claims to have a lien superior to any other claim, and there is no injustice in requiring him to look to these respective portions for the amounts properly chargeable to each. The parties to the deed are estopped from alledging that it was not intended as an absolute deed; and Cadwell's interests will not suffer by holding it a deed, unless indeed under the peculiar circumstances of this case and because of his inability to make a rest in his accounts.

The referee thinks that it is immaterial whether the instrument is held to be a deed or mortgage. I agree with him; but think that in either case a rest should be made in the account at the time of the severance of the interest of Thomas. Cadwell's claim is that of an equitable lien, and should be enforced so as to do equity to all. By the mortgage to the City Bank and the conveyance or mortgage to Tomlinson, third persons acquired legal as well as equitable interests in distinct portions of the premises before then owned by Thomas, and the equities of Cadwell should be treated with a view to preserve the equitable rights of the mortgagees, as between each other, and if one of the mortgagees or grantees has from that time paid the proportion of the cost of the improvement of the premises properly chargeable to the part conveyed to him and to preserve his lien, it would be manifestly wrong to charge it with an additional sum which was in fact advanced for another interest in the same premises. In truth it would seem by the report and the evidence that the effect of the report was to charge upon Tomlinson's one-eighth the whole amount of advances made upon the one-fourth, and the greater part of which were in fact

made upon and for the benefit of the one-eighth claimed by the
Albany City Bank, and by the report awarded to it; Tomlinson
having in fact paid the one-eighth of the cost of the building.
It is said, however, that no rest can be made in the account.
That is probably true as the evidence now stands, but it by no
means follows that the parties can not do it or furnish data
from which it can be done with reasonable accuracy, upon a re-
hearing.   But if it can not be done, Tomlinson or those claim-
ing under him should not suffer.   Mr. Cadwell is the claimant,
and must be able to establish his right, or he can not succeed.
The uncertainty and difficulty is not caused by any act of Tom-
linson, and if Mr. Cadwell, from the manner in which he has
kept his accounts, or for any other reason, is unable to make
up an account or furnish data from which the referee can state
an account with reasonable accuracy, and so as to preserve with
certainty the equitable rights of others, he should suffer.
Third persons and strangers should not suffer from a confusion
of accounts for which they are not responsible.

Upon the assumption, therefore, that Mr. Cadwell has a lien
for his advances towards the expenses of the improvements,
beyond his share, as is claimed, the referee should have charged
upon the whole Thomas quarter, the amount advanced and
paid by Cadwell, in respect to that quarter, up to the time of
the division of the interest of Thomas, and from that time the
account should have been stated separately in respect to each
one-eighth, and each parcel charged with the amount advanced
and paid in respect to it.

Before reaching this point of the examination in this case, I
had designed to rest the decision of this matter for the present,
upon the point already examined, to refer the matter back for a
re-hearing, and to leave the examination of the other questions
until they might arise upon a future report, when other evidence
might possibly be before the court, which would affect the result.
But upon reflection, I have thought it more advisable to decide
such of the questions argued before me, as upon the evidence
and report can be definitely passed upon, to the end that the
parties interested may at once appeal from the order which I

shall make, and the question be promptly decided. As I have violated the order in which the questions naturally arise, in the course I adopted in the examination of the case, I will not attempt to change the plan, and will, therefore, refer to the questions as they occur to me, without reference to any particular order or method.

II. As to the claim of Mr. Cadwell. It is established by the proof that he advanced towards the erection of the Empire Block an amount exceeding his proportion of the cost, and that none of the other owners, except Thomas, were in arrears; so that it follows that the advance was in respect to the portion of the premises owned by Thomas. And I am of the opinion, without a very close examination of the evidence, that there is proof that would warrant a court or jury to find a request on the part of Thomas, to Cadwell to make the advances, and a promise to repay him, and that Cadwell could, in an action for money paid and advanced, have recovered. The erections were expensive and valuable improvements, not repairs in the strict sense of that term. They were not necessary to preserve the premises from dilapidation and ruin, and to save the property. They were not a matter of necessity, and hence the common law writ *de reparatione facienda* would not have lain. One of the tenants in common could not by any act of the others and against his consent, have been compelled to unite in making these improvements. (*Story's Eq. Jur.* § 1235.) And even in the case of repairs it does not appear to be well settled that in this country, in the absence of any statute, one tenant in common can make the necessary repairs, and charge his cotenants in an action for the amount, in the absence of any contract. (*Loring* v. *Bacon*, 4 *Mass. Rep.* 575. *Converse* v. *Fern*, 11 *Id.* 325. *Doane* v. *Badger*, 12 *Id.* 65.) He can not do this without first requesting his co-tenant to unite in making the repairs. (*Mumford* v. *Brown*, 6 *Cowen*, 475.) But whatever may be the rule as to necessary repairs, it can not be pretended that one tenant in common can be made liable to the others for improvements of the character of those made in this case, in the absence of an express or implied contract to

pay for them.   The parties must rely upon an agreement, if
they seek to charge either the person or estate of their co-ten-
ant for expenses of this character; and I am unable to perceive
why, if they desire or expect a lien on the estate benefited, for
the expense of the improvements, they should not secure such
lien by an express contract.   It was attempted to make the lien
claimed in this case analogous to that of a vendor, for unpaid
purchase money, but that lien is given for reasons not applica-
ble to this case.   (*Story's Eq. Jur.* §§ 1218, 1230.)   It can not
be necessary to extend the principle to a case like the present.
Secret trusts and interests in real estate are not encouraged
by the course of legislation or judicial decisions in this state.
Sir Edward Sugden, in his treatise on vendors and purchasers,
(2 *Vol.* 131, *9th London ed. ch.* 15, § 1,) says : "It seems that
when two or more persons purchase an estate, and one, for
instance, pays all the money and the estate is conveyed to them
both, the one who paid the money can not call upon those who
paid no part of it to repay him their shares of the purchase
money, or to convey their shares of the estate to him; for by
*payment of all the money he gains neither a lien nor a mort-*
*gage, because there is no contract for either;"* and to this he
cites *Wood* v. *Buck,* and *Wood* v. *Norman,* (*Rolls, 7th and*
*8th March,* 1804.)   So in this case, if the advances were made
by Cadwell as a volunteer, without any request or assent
on the part of Thomas, and in the absence of any promise ex-
press or implied to repay them, he has no remedy; but if made
upon a promise of repayment he has the personal responsibility
of Thomas.   He has all the security he contracted for, and if
he had desired any thing further, as a lien or mortgage upon
the estate, he should have provided for it by contract.   Upon
an examination of such of the authorities to which I was re-
ferred as are accessible to me and such others as I have been
able to refer to, I can find no principle established which would
authorize the allowance of the claim of Mr. Cadwell.   Judge
Story, in his commentaries on equity jurisprudence, says
that money laid out by one party in the improvement of an
estate does not in strictness constitute a lien on the estate.

(*Story's Eq. Jur.* § 655.)  He says, it is true, that a court of equity will not grant a partition upon the *application of the party* in default, without first directing an account and compelling the party applying for partition to make due compensation. This is upon the familiar principle, that in a court of equity, he who asks equity must do equity.  To this principle the commentator cites *Swan* v. *Swan*, (8 *Price*, 518,) and the case decides this principle and nothing more, but expressly repudiates the idea of a lien upon the premises, to be enforced as such. Within this principle, if Thomas had come into this court sitting as a court of equity and asked a partition, he could have been compelled to do justice to his co-tenants who had advanced their money to enhance the value of the property.  The same principle is reiterated by Judge Story in §§ 1234, 1238.  There are other cases in which, under certain circumstances, one of two or more tenants in common has been permitted by courts of equity to recover for improvements made in good faith, and sometimes to charge them upon the property.  But these are cases peculiar in themselves, and the principle upon which they were decided would not affect this case.  They are referred to in Story's Equity Jurisprudence, § 1234, and seq. and notes, and need not be referred to by me more particularly, with the exception of one or two cases which have been cited by elementary writers as authority for principles which can not legitimately be deduced from them.

In *Lake* v. *Craddock*, (1 *Eq. Cas. Abr.* 29 ; *S. C.* 3 *P. Wms.* 158,) lands had been bought by several, with a view to an expensive improvement by draining, &c. and for a time all advanced money.  At length Craddock, apprehending a loss, abandoned the work and property, and withdrew from the enterprise, and sometime afterwards died.  His copartners went on with the work, and some *thirty years* after Craddock abandoned, Lake, one of the proprietors, brought his bill against the rest, including the representatives of Craddock, for an account and division of the partnership estate.  The principal question was whether the proprietors were joint tenants, and as to the right of survivorship.  The master of the rolls held, (and his decree

was affirmed upon appeal,) that survivorship should not take place, for that the payment of money created a trust for the parties advancing the same, and an undertaking upon the hazard of profit and loss, and was in the nature of merchandize, when the *jus accrescendi* is never allowed ; that suppose one of the parties had laid out the whole money and had happened to die first, according to the contrary construction he must have lost all, but that the defendant Craddock ought not to have the benefit of the tenancy in common, unless he would make the advance · of his father equal with that of the others. It will be seen that the decisions, so far as it respected the rights of Craddock, the defaulting joint owner, did not proceed upon any idea of a lien, but rather upon the principle upon which *Swan* v. *Swan* was decided. At law the estate was that of a joint tenancy with the right of survivorship ; but Craddock claimed that in equity it should be held a tenancy in common, and his claim was allowed upon the condition that as he asked equity he should consent to do equity.

In *Scott* v. *Nesbett,* (14 *Vesey,* 437,) an allowance was made for advances for supplies to a West India estate, not on the ground of a lien, but on account of the nature of the subject and as distinguished from a mere landed estate in England. See also *Putnam* v. *Ritchie,* (6 *Paige,* 390,) in which the doctrine of lien for advances in the improvement of estates is examined to some extent, by the chancellor. I think it will be found that a court of equity has, in but few if any cases, established a lien which did not arise out of a contract, or was not established by usage ; unless under peculiar circumstances, and when the party against whom, or whose property the lien was established, came to the court for relief, and the lien was enforced as a condition to the relief granted. In this proceeding, those claiming under Thomas are not asking the aid of the court against Cadwell. They are merely asserting their legal as well as equitable right to the fund in court, and Cadwell is doing the same. Both parties are actors. It is not a proceeding instituted by the grantees of Thomas against Cadwell to take from him any thing which he now has. Cadwell is in no better situation than he

Taylor v. Baldwin.

would have been had he filed a bill to enforce his alledged lien against the property itself, making Thomas and his grantees parties, and in that case I am quite clear, he could not have sustained his action.

My conclusion is, that the referee erred in reporting in favor of Cadwell, for his claim.

III. As to the claim of Mr. Baldwin. He claims so much of the surplus moneys, as arise from the sale of one-tenth and one-twentieth of the property covered by his mortgages, and this claim brings him, to a small amount, in conflict with the Albany City Bank. The surplus in court arose from the sale of one-fourth of the property, the whole at one time owned by Thomas. One-tenth was not covered by Baldwin's mortgages, and the Albany City Bank having a mortgage upon one-eighth, prior to the conveyance of the one-eighth to Tomlinson, have the right to insist that they took by virtue of their mortgage that part which was unincumbered; or in other words, the mortgages to Baldwin must be satisfied first, out of the part last conveyed, and that part is the interest conveyed to Tomlinson. So that in the view I take of the case, the Albany City Bank are entitled to one-tenth of the whole surplus, which is nearly one-half of the amount in court.

The whole amount now in court is  .   .   . $5,731 77
To four-tenths of this, or one tenth of the whole,
    the bank is entitled, which is .   .   .   . $2,292 70
For one-tenth of this surplus, the bank and Mr.
    Baldwin are in conflict, .   .   .   .   . $573 17

And, as between these claimants, I am of the opinion that the bank is to be preferred. I am not called upon to decide whether an action at law could be maintained against Thomas upon his bonds, after an eviction from the premises. Whether such action could be maintained or not, it is quite clear that equity would interfere and stay proceedings upon such terms as should be equitable.

Neither is it necessary to hold that the mortgage is void. I do not think it is so. It by no means follows that Mr. Baldwin has lost his lien upon the interest which he had in the premises

---

---

by reason of a breach of his covenant against encumbrances, and for quiet enjoyment, by the eviction of his grantee on the foreclosure of a mortgage upon the premises. His lien attaches to whatever interest passed to his grantee, subject, it is true, to the rights of the grantee. . In most cases, upon a failure of title, and an eviction, the question could not arise, as there would be nothing to which the lien could attach, and the only contest would be as to the personal liability of the purchaser, upon his bond. But in this case, the money now in court represents the land conveyed, and in case there had been no mortgage, it would clearly belong to the grantee, by virtue of his grant. And all liens upon the land follow and attach to the fund in court. So that, for all the purposes of the question now before me, the money may be treated as so much of the granted and mortgaged premises undisposed of, and as if it remained as land.

The mortgage could, notwithstanding the eviction, be enforced against the premises, although the mortgagor might not be liable upon his covenant to pay. (*Banks* v. *Walker*, 2 *Sandf. Ch. R.* 344. *Leggett* v. *McCarthy*, 3 *Edw. Ch. R.* 124.) This would however, as before said, be subject to all equities of the grantee and mortgagor, growing out of the transaction.

If, instead of a sale of the whole premises upon the Taylor mortgage, only one-half of that part conveyed by Baldwin to Thomas, had been sold, it is quite evident that Thomas' title to the part unsold would have been good, subject to the claim of Baldwin under his mortgage, and in any attempt of the latter to enforce his mortgage, Thomas would, in equity, have been permitted to recoupe the damages sustained by an eviction from the one-half sold, and to have applied in part payment of the purchase price of the part which he retained, what he had paid towards the whole. Baldwin's claim and Thomas' liability would have been made to accord with the altered state of things and change of interests. So when the land is represented by a fund in court, the result is the same. Thomas, upon the occasion of his purchase, paid to Baldwin, $1,500. This exceeds the amount in controversy between the latter and the City Bank. It is true, that Thomas has had the rents and profits for seven years, and

Taylor v. Baldwin.

it is possible that they exceed the interest upon this sum, and the whole interest which he has paid; and if no improvements which had added to the value of the property, and enhanced the price which had been obtained for it, upon the sale, had been made upon the premises in good faith, and relying upon the title, I might deem it necessary to refer it back to ascertain the fact, and state an account as to rents and income. But the evidence is, that at least one-half the value of the property, at the time of the sale, was in these improvements, so that there is no equity in a claim upon Thomas or his assignee to account for the rents and profits. I can not bring myself to doubt that the bank have a right, as mortgagees of the premises from Thomas, to urge these equities and make this claim as against Baldwin. Not as assignees of the covenants in the deed—with these we have nothing to do at this time—but as grantees of the premises and of all the interest that Thomas had in them; this interest to the amount of his payments, was legal and tangible, and is still legal and tangible, and is represented by the money in court. If this fund is considered as having lost the character of land, and to be merely the subject of equitable claim, then I should be of the opinion that the bank, as mortgagees of Thomas, should be considered to be the equitable assignees of his equities and claim upon the fund, and to stand in his place. (*Batten on Contracts*, 354, & seq.) Other calculations might perhaps be made showing greater equities on the part of Thomas as against Baldwin, viz. thus :

1. Thomas paid upon the occasion of his purchase,    $1,500 00
2. His one-tenth which was not covered by the Baldwin mortgages, paid of the Taylor mortgage,    2,312 29
3. The improvements made, say one-half of the whole amount raised by sale. Then the improvements upon the one-tenth and one-twentieth which were covered by the Baldwin mortgages, paid towards the Taylor mortgage, .   .   .   .   .   .   .   1,734 21

Making,    .   .   .   .   .   .   .   $5,546 50

Which Thomas (or his property,) has paid either to Baldwin, or upon debts which he should have paid. From this net income should be deducted. I do not mean to say that an account like this should be stated against Mr. Baldwin. This would depend upon facts not in evidence before me, and questions which need not now be examined, and perhaps in no event can any such account be stated against Mr. Baldwin. It is sufficient to say that the equities are clearly against Mr. Baldwin, as between him and the bank, and an order must be entered directing the payment of one-half the amount now in court, to the bank, and referring it back to the referee for a rehearing, as between the heirs and widow of Tomlinson and Mr. Baldwin. I direct this rehearing for the reason that upon the argument these two classes of claimants expressly declined to argue their claims as antagonistic to each other, and from intimations which fell from counsel, I was led to believe that upon a rehearing additional facts might be developed which would throw light upon the claims of each. Neither party to recover costs against the other.

