ANDREW COSGRIFF et al., Respondents, *v.* WILSON P. FOSS et el., Respondents, and WILLIAM DEWEY, Appellant.

1. PARTITION — ALLOWANCE FOR IMPROVEMENTS. A tenant in common, who is also a lessee of his cotenant, cannot be allowed in partition for improvements made upon the property in the course of his tenancy, which enhanced its value and were made with the knowledge but without the consent of the cotenant, when the effect of such improvements was not to protect or preserve the property, but to aid the tenant in carrying on a business then prosecuted by him upon the premises, the increased income from which was not shared with the cotenant.

2. IMPROVEMENTS — DISTINGUISHED FROM REPAIRS — ALLOWANCE FOR. Contribution between cotenants for improvements, as distinguished from

repairs, when the property is so situated that actual partition is out of the question, is not required in this state, even by courts of equity, except in the case of mills, houses and the like under circumstances of special necessity.

*Cosgriff* v. *Foss*, 65 Hun, 184, affirmed.

(Argued February 10, 1897; decided March 2, 1897.)

APPEAL from a judgment of the General Term of the Supreme Court in the second judicial department, entered March 30, 1893, which modified and, as modified, affirmed a final judgment in partition entered upon a decision of the court on trial at Special Term.

This was an action of partition, and upon the trial thereof without a jury the court found that Andrew Cosgriff was entitled to eighteen undivided sixty-fourths of the premises in question; that Wilson P. Foss and Jacob E. Conklin were each entitled to nine undivided sixty-fourths, and that William Dewey was entitled to twenty-eight undivided sixty-fourths. The premises consist of one hundred and ten acres of land lying along the Hudson river in Rockland county, of a mountainous character, adapted to the quarrying of trap rock, and the crushing thereof, for supplying the markets of New York city, and they have substantially no value for any other purpose. At one end a quarry has been operated for many years by various tenants of the owners of the property. On the 28th of March, 1889, Catharine Blauvelt, who was then the owner, executed a lease of nine undivided sixteenths of said premises to Mr. Dewey, " to be used only for the purpose of and for the business of a quarry, the excavation, preparation and sale of stone or rock, either crushed or uncrushed," for the period of three years from March 1st, 1889, at a rent reserved of $1,000 per year. The landlord reserved the right to sell the premises, but the tenant was given " the option of purchasing the same at the price agreed upon in preference to any other person or persons," and the right was expressly granted to him, " at any time during the continuance of said

term, of removing any machinery or buildings which he may erect or place upon said premises." Mr. Dewey operated the quarry as tenant until August 31, 1889, when he became the owner of his said share by virtue of a conveyance that was subject to his lease. On August 2d, 1890, Cosgriff, Foss and Conklin acquired their interests, including the landlord's rights under said lease, by a deed of that date which was also subject to the lease to Dewey. From August 31, 1889, when Mr. Dewey became part owner, until July, 1891, when a reference was had to ascertain the value of the improvements, he was in possession and occupation of the premises, and during that period improved the same for quarrying purposes by building foundations of stone masonry, erecting buildings for use in the business of quarrying and breaking stone, enlarging the working space of the quarry and making changes and additions which are substantial and useful, and increase the value of the premises. The cost of the improvements allowed by the Special Term was $9,672.40, of which $5,440.73 was directed by the final judgment to be deducted from the shares of the cotenants and paid to Mr. Dewey. The premises, which are worth from $20,000 to $40,000, and have a rental value of at least $2,000 per year, are incapable of actual partition, and a decree was made for the sale thereof and the distribution of the proceeds among the owners, according to their respective shares, subject to the modification above named.

The General Term modified the judgment by striking out the allowance for improvements, but in all other respects affirmed the judgment rendered by the Special Term. The defendant Dewey appealed to this court.

*Clarence Lexow* for appellant. An action for partition of real estate being in the nature of an equitable action, the court will compel a person invoking the equitable powers of the court in such an action to recognize and make proper allowance for the equitable rights of another party to the action. (*Ford* v. *Knapp*, 102 N. Y. 135; *Moore* v. *Thorpe*, 16 R. I. 106; *Broght* v. *Boyd*, 1 Story, 478; *Wetmore* v.

*Roberts,* 10 How. Pr. 51; *Mickles* v. *Dillaye,* 17 N. Y. 80; *Miner* v. *Beekman,* 50 N. Y. 339; *Thomas* v. *Evans,* 105 N. Y. 614; *Putnam* v. *Ritchie,* 6 Paige, 390.) The respondents cannot claim that the value of the benefit derived by the appellant from the use by him during the continuance of his lease of the improvements made on the premises should have been deducted from the allowance for such improvements. (*Hitchcock* v. *Skinner,* Hoff. 21.) Compensation for the dock improvements was properly allowed by the referee. (1 Am. & Eng. Ency. of Law, 641, 644; *McDermott* v. *Palmer,* 8 N. Y. 383; Gerard on Titles, 501; *Voorhees* v. *Burchard,* 55 N. Y. 98; *Bank of Auburn* v. *Roberts,* 44 N. Y. 192; *Woodhull* v. *Rosenthal,* 61 N. Y. 382, 390; *Ogden* v. *Jennings,* 62 N. Y. 526; *In re Opening of Eleventh Ave.,* 81 N. Y. 436; *Newman* v. *Nellis,* 97 N. Y. 285; 3 Washb. on Real Prop. [4th ed.] 446; *L. S. L. Co.* v. *Emerson,* 38 Minn. 406; *Yates* v. *Milwaukee,* 77 U. S. 497; *Story* v. *N. Y. El. R. R. Co.,* 90 N. Y. 122; *Kane* v. *N. Y. El. R. R. Co.,* 125 N. Y. 164; *Egerer* v. *N. Y. C. & H. R. R. R. Co.,* 130 N. Y. 108.)

*Irving Brown* for respondents. Dewey must be regarded as having made the so-called improvements as tenant, and no claim for them can be allowed. (5 Bacon's Abr. 563; *Cowper* v. *Fletcher,* 34 L. J. Q. B. 187.) A cotenant cannot be charged for improvements excepting such as are necessary for the preservation of the property, unless he gives his consent or promises to share in the expense. (McAdam on Landl. & Ten. 98, 133; *Coakley* v. *Mahar,* 36 Hun, 157; *Ford* v. *Knapp,* 102 N. Y. 135; *Scott* v. *Guernsey,* 48 N. Y. 106; Sedg. & Wait on Titles, § 703; Gerard on Titles, 314; *Green* v. *Putnam,* 1 Barb. 500; Knapp on Partition, 9, 10; *Hannan* v. *Osborn,* 4 Paige Ch. 336; *Moore* v. *Coble,* 1 Johns. Ch. 385; Code Civ. Pro. § 1589; *McCabe* v. *McCabe,* 18 Hun, 153; *Elwell* v. *Burnside,* 44 Barb. 447; *Job* v. *Patton,* L. R. [20 Eq.] 84.) No recovery for improvements can be had after suit brought, or other legal proceeding con-

cerning title has been instituted. (Sedg. & Wait on Titles, 533.) Dewey makes a claim for expenditures made upon lands belonging to the state of New York, below high-water mark of the Hudson river, adjacent to the lands in question, which were incurred in dredging in front of the dock, repairs to the dock and filling. This claim cannot be allowed, because they are not for improvements made upon the land. (Sedg. & Wait on Titles, 531; *Curtis* v. *Gay*, 15 Gray, 36; *Coburn* v. *Ames*, 56 Cal. 385; *Hoboken* v. *P. R. R. Co.*, 16 Fed. Rep. 816.)

VANN, J. The question presented by this appeal is whether a tenant in common, who is also a lessee of his cotenant, can be allowed in partition for improvements made upon the property in the course of his tenancy, which enhanced its value, and were made with the knowledge, but without the consent, of the cotenant, when the effect of such improvements was not to protect or preserve the property, but to aid the tenant in carrying on a business then prosecuted by him upon the premises, the increased income from which was not shared with the cotenant.

At common law a tenant in common, who has made permanent improvements, as distinguished from ordinary repairs, upon the common property, cannot recover from his cotenant any part of his expenditures for that purpose, unless they were made at the request or with the consent, express or implied, of the latter. (*Mumford* v. *Brown*, 6 Cow. 475; *Jackson* v. *Bradt*, 2 Caines, 302; *Taylor* v. *Baldwin*, 10 Barb. 582, 590, 626; *Putnam* v. *Ritchie*, 6 Paige, 390, 405; *Crest* v. *Jack*, 3 Watts, 238; *Gregg* v. *Patterson*, 9 Watts & S. 197, 209; Story's Eq. Jur. § 1235; Knapp on Partition, 10.) In some states this is the rule, even when the expenditure was necessary to keep the property from going to ruin, while in others, repairs essential to preservation may be made at the expense of the cotenants, in proportion to their respective shares, without their consent, especially if such consent is unreasonably withheld after due request. It is strictly limi-

ted to repairs, however, and does not extend to improvements not essential to protect the property, but designed to enhance its value. (*Loring* v. *Bacon*, 4 Mass. 575; *Beaty* v. *Bordwell*, 91 Pa. St. 438; *Stackable* v. *Stackpole*, 32 N. W. Rep. 808; *Wiggin* v. *Wiggin*, 43 N. H. 561; *Alexander* v. *Ellison*, 79 Ky. 148; *Hancock* v. *Day*, 36 Am. Dec. 293.)

The rule of courts of equity upon the subject is more liberal and extends to improvements in special cases, as, in an action of partition, for instance, the court acts upon the principle that the party who asks for equitable relief will be required to do what is equitable himself. The rule, however, is carefully limited to those cases where special circumstances give rise to strong equitable rights. (*Putnam* v. *Ritchie*, 6 Paige, 390; *Ford* v. *Knapp*, 102 N. Y. 135.)

Some authorities sanction repairs that are absolutely necessary to preserve houses and mills, already erected and in being, but refuse to extend the rule to other kinds of property. (*Dech's Appeal*, 57 Pa. St. 467, 472; *Anderson* v. *Greble*, 1 Ashmead, 136, 139.) Chancellor KENT says: " One joint tenant, or tenant in common, can compel the others to unite in the expense of necessary reparations to a house or mill belonging to them, though the rule is limited to those parts of the common property and does not apply to fences inclosing wood or arable land." (4 Kent, 370.) Other cases permit improvements to be set off against rents and profits, but not charged against the body of the estate unless made with the knowledge and consent of the other owners. (*Pickering* v. *Pickering*, 63 N. H. 468; *Luck* v. *Luck*, 113 Pa. St. 256; *Jones* v. *Jones*, 23 Ark. 212.) Where one tenant in common, who was in possession supposing himself to be the legal owner of the entire premises, erected valuable buildings thereon, he was held entitled to an equitable partition so as to give him the benefit of his improvements. (*Town* v. *Needham*, 3 Paige, 546.) So in an action for partition, where actual division is possible, the cotenant who has made substantial improvements upon one parcel, is usually allotted the part that he has enhanced in value or so much thereof as represents his share

in the whole tract.  (Freeman on Cotenancy and Partition, § 509; 17 Am. & Eng. Enc. of Law, 758.)  But when the property is so situated that actual partition is out of the question, even courts of equity, in this state, do not require contribution for improvements, as distinguished from repairs, except in the case of mills, houses and the like, under circumstances of special necessity.  The erection of a new and independent building, the improvement of farming lands by fencing or drainage, the opening of mines or quarries, or the making of changes that are in no sense designed to protect or preserve the property, but simply to improve it and increase its value, do not warrant the court in requiring a cotenant who has not consented to contribute to the expense.  This is just, as an extension of the rule from repairs to general improvements, in the nature of new erections, might enable one cotenant to "improve" the other out of his share in the property.  The case of *Green* v. *Putnam* (1 Barb. 500) is sometimes cited as an authority sanctioning an allowance for the erection of a new building without consent.  In that case, however, the plaintiff had been consulted and had consented to the construction of a smaller building, but objected when it was ascertained that a larger one was in process of erection.  The allowance made was "limited to the sum necessary for erecting the smaller building, and no relief was granted for the amount expended without the plaintiff's consent."  The leading cases in this state are *Scott* v. *Guernsey* (48 N. Y. 106) which is relied upon by the respondents, and *Ford* v. *Knapp* (102 N. Y. 135) which is relied upon by the appellant.  In the former case two remaindermen, without the consent of the others, but with the consent of the life tenant, erected buildings upon the premises, under an agreement with the life tenant that they might put up the buildings and receive the rents.  One building erected in 1833 increased the value of the land by $750, and another erected in 1841, by $200.  In 1854, when the life tenant died, the rents received had largely exceeded the value of the buildings and the interest on the investment.  It was held that the remaindermen who thus improved the property

were not entitled to any compensation therefor, and, upon partition, could not exact reimbursement from, or claim a lien upon, the shares of their cotenants.   The court said : " There was no consent, mistake, or other equitable ground in this case for relieving the party who made his investment with full knowledge of the facts, voluntarily, and without any inducement offered by other cotenants.   Had the appellants offered to share their rents, upon being paid a due proportion of the value of the improvements after the termination of the life estate, it might have afforded a better ground to claim compensation.   The appellants are not within the reason of any of the adjudged cases, where relief has been granted in partition for money expended in improvements by one of several tenants in common."

In *Ford* v. *Knapp* " the defendants were tenants in common with one Whittaker of a mill property badly run down, and out of repair."   Whittaker's interest was sold upon execution to the defendants, " but subsequent judgment creditors redeemed and acquired the title of the debtor."   " During the fifteen months between the sale and redemption, the defendants expended a large amount upon " a gristmill on the premises.   Some of the machinery, adapted to and once used for merchant milling, was out of date and not worth repairing, while that necessary for custom work was still in use, but " dilapidated and inefficient."   The dam was repaired, a new water wheel made and the machinery so changed as to do good custom work, which was classed by the referee who decided the case as repairs, " while the addition to the buildings and the introduction of new machinery and appliances for a merchant mill he classed as improvements.   These repairs and improvements largely increased the market value of the property.   Before they were made, a generous estimate of that value did not exceed $8,000, while on the sale in partition it brought about double that amount."   The Supreme Court refused " any allowance either for repairs or improvements."

This court, referring to *Scott* v. *Guernsey*, said : " Here were reasons enough for denying any equity to the improving

tenant, and the case stands solidly upon its facts and is not open to criticism. But it does not deny the duty of a court of equity in a proper case to give its relief upon condition of an allowance for improvements, and does not undertake to specify all the cases in which such equity shall be recognized. Nor shall we undertake any such dangerous or impossible effort. The authorities leave us at liberty to consider whether, upon the facts and circumstances of this particular case, the improving tenant ought to be protected, and furnish us the power to grant the protection if it may justly be demanded." After alluding to some of the facts of the case then in hand, the court continued : "The defendants acted in the presence of a peculiar and unusual emergency ; they acted in entire good faith ; the repairs were necessary and not merely a venture or speculation, and the improvements were in the *line of restoration* and not of new and strange enterprise. What they did was natural and normal to the use and character of the property and such as joint owners of equal ability might be expected to join in making. They offer to share in the increased income thus secured, and in every respect appear to have acted fairly." The court sent the case back for a division of the proceeds of the sale according to the principles stated in the opinion, and for an accounting of the income and profits which the defendants offered to make.

We do not regard the two cases thus reviewed as in conflict. In the one special equities existed, while in the other they did not, and judgment went accordingly. In the earlier case those who made the improvement did it as a business venture, and they had received back from it not only principal and interest, but also a large profit, which they did not offer to share with their cotenants. In the later case those who made the improvements did not make them as a business venture, but to save the property and prevent the " business and custom " of the mill from drifting " into other hands." What they did was " in the line of restoration," not of independent construction, and when they had done it and had doubled the value of the property, they offered to share the increased

profits with their cotenants. The improvements were made upon a mill and mill dam, which, owing to their peculiar nature, seem always to have appealed strongly to courts of equity for aid through contribution toward repairs and reasonable improvements, so as to keep pace with the times, accommodate the public and prevent loss of custom.

In the case before us we find no such equitable strength in the claim of the appellant. He sustained the double relation to his cotenants of tenant by lease and tenant in common. Under the former relation he was entitled to no repairs, but was bound by a covenant in the lease to make such as would keep the premises in their normal condition, except depreciation by use and damages by the elements. The improvements were made mainly for the purpose of extending his business and increasing his sales, in which his cotenants had no interest. He had the right, by express contract, to remove all his structures during the term of his lease. The nature of the property did not permit decay, and there was no controlling necessity for making the changes and additions. If they had not been made the premises would not have depreciated in value. Some of the work was done after this action was commenced and a part even after the trial was in progress. It does not appear that the appellant offered any share of the profits to his cotenants, or to what extent the value of the premises was increased, or, unless inferentially, that they would sell for any more on account of the improvements. His erections were in the nature of new and independent construction to enable him to quarry more rock and sell it, and thus, *pro tanto*, he consumed the property. They were not " in the line of restoration," but of a business venture.

We know of no well-considered case in this state that would authorize an allowance for improvements under these circumstances. It would be a dangerous extension of the rule governing the subject, which is always applied with caution, to permit one cotenant to run the other in debt, against his will, for unnecessary improvements. Equity requires contribution

from tenants in common only to prevent injustice, and, unless the rule is kept well in hand, it is liable to cause more injustice than it prevents.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.