419 P.2d 764

**H. L. LOWE, Plaintiff-Appellant,**

**v.**

**P. G. ADAMS, Defendant-Appellant,
Mary L. Almon, Defendant-Appellee.**

**No. 7752.**

Supreme Court of New Mexico.

Oct. 31, 1966.

Earl E. Hartley, Albuquerque, Oliver E. Payne, Thomas A. Donnelly, Santa Fe, for plaintiff-appellant, H. L. Lowe.

Jack L. Love, Hobbs, for defendant-appellant, P. G. Adams.

Hammel Carrell, Joseph O. Walton, Lovington, for defendant-appellee, Mary Almon.

## OPINION

CHAVEZ, Justice.

This is an appeal from an action seeking partition of real estate in Lea County.

The trial court found that defendant-appellee Mary L. Almon is the owner of and may remove from the lands involved in this litigation the water right and other improvements placed thereon by Almon. Defendant-appellant P. G. Adams has aligned himself with plaintiff-appellant H. L. Lowe.

The trial court found that on March 1, 1948, one Almira Adams executed a written lease of the surface to her daughter, Mary L. Almon, defendant-appellee, to run from March 1, 1948, to February 28, 1953. The lease provided for a rental of $250 per year and allowed appellee to:

"* *. * drill wells and install pumps for irrigation purposes, and that any and all fixtures and improvements in their nature removable may be removed by the Lessee upon the termination of this lease."

The trial court also found that on March 24, 1948, appellee made application to the state engineer to appropriate water for the purpose of irrigating 320 acres of the land in question, and that said application was approved on May 18, 1948. Under that approval, and approval of supplemental applications in 1951 and 1954, appellee drilled a total of three wells and irrigated the land.

The trial court further found that on September 1, 1953, Almira Adams executed another written lease of the surface to appellee Mary L. Almon. The rent remained at $250 per year and the lease expired on December 31, 1957. The lease was orally extended from year to year and was in effect at the time of Almira Adams' death. This lease provided:

"2. It is understood that this is a renewal of a similar lease between the parties on said premises, that by the terms of the previous lease second party [appellee] was to make such improvements on the land including houses, irrigation units and the development of water rights as she saw fit, and all improvements made by her were to remain her property and could be removed by her at any time. And that pursuant thereto she now has upon the land one four room frame house, one·two room frame house, one aeromotor windmill, one eight inch Smithway irrigation pump with Chrysler motor and 500 gallon Propane tank, one ten inch Smithway irrigation pump with Buick motor and 500 gallon Propane tank, and water right permits allowing the development of as much as 320 acres of water rights. That all of said improvements shall remain the property of the second party and may be removed by her at any time during the term hereof or a reasonable time after the termination of this lease. * * *"

The trial court also found that the reasonable market value of the 320 acres of irrigated land in controversy, with the water right, wells, pumping equipment, tenant house or houses, and all other improvements in connection with the use of said water right, is the sum of $250 per acre; that on the date of the death of Almira Adams there was an enhancement in value of said 320 irrigated acres of land in controversy in the sum of $200 per acre, on account of the said water right, wells, equipment, improvements, etc., and that the improvements could be removed from the land without material injury thereto.

The trial court concluded that the water right was the sole property of appellee; that it was appurtenant to the possessory right of appellee and to the life estate of Almira Adams; that upon termination of the life estate, appellee had the right to sever her water right from the land; and that, since appellee was a tenant in common with the other parties to the partition action, she should be required to leave the water right and improvements on the land, if the other parties were willing to reimburse her for their share of the enhancement value brought about by said water right, equipment and improvements.

Appellants claim that the trial court erred in reaching these conclusions. They cite the general rule that the lessee of a life tenant cannot charge the remaindermen for improvements made to the realty, even if the lessee is one of the remaindermen. They additionally contend that the water right was obtained by virtue of the ownership of the remaindermen, and that it passed to all remaindermen upon the death of the life tenant.

Section 75–5–22, N.M.S.A., 1953 Comp., provides in part:

"All water used in this state for irrigation purposes, * * * shall be considered appurtenant to the land upon which it is used, and the right to use the same upon said land shall never be severed from the land without the consent of the owner of the land; but by and with the consent of the owner of the land, all or any part of said right may be severed from said land, * * *."

Appellants contend that, since Almira Adams was only a life tenant, she was not the "owner" within the purview of § 75–5–22, supra, and did not have the power to effect such a transfer. We note here that no other state appears to have a statute similar to ours.

Appellee directs our attention to the judgment in cause No. 3160, district court of Lea County, entitled W. W. Adams, et al, v. Almira Adams, et al., decided by Judge James B. McGhee on March 8, 1938. That cause was a suit to quiet title, to determine the ownership of the lands herein involved, brought by Almira Adams, the children of W. W. Adams and his deceased first wife,

and the children of W. W. Adams and Almira Adams, his second wife. Judge McGhee at first concluded that the nine children of W. W. Adams owned the property subject to the life estate of Almira Adams; however, in his findings he stated:

"VIII. * * * that under the strict construction of the law applicable to life tenants and remaindermen, the defendant Almira Adams, should be required to account to the plaintiffs and defendants herein other than herself, for the sum of $2875.00; but, that under the terms of her letter to the plaintiffs on December 24, 1925, whereby she was to have a comfortable living from said lands during her life time, the Court finds that such sums so received by her from said estate were necessary for a comfortable living and that she should not be required to account to the plaintiffs for such sums or any sum whatever."

And concluded:

"3. That a trustee should be appointed to collect the mineral rentals on the lands involved herein, with authority to execute a new or renewal mineral lease on the lands upon the expiration of the one now in force upon application to the Court and notice to the plaintiffs and defendants, and to also collect any royalty moneys which may be received, and to pay out so much of the royalty money, as well as that received on account of rentals or bonus, as may be necessary to give to Almira Adams a net annual income of $100.00 per month, from the lands in question during her life time, and jurisdiction of this cause should be retained for the purpose of carrying out the terms of the decree to be entered, and to meet any changing conditions which might require additional support money for said Almira Adams, in the event of an increase in income."

The cause was reconsidered in the district court on January 13, 1950, and some of the orginal provisions were altered.

The quoted portions of the judgment entered in the district court on March 8, 1938, are inconsistent with the conclusion that Almira Adams received a life estate. A life tenant cannot lease land to others for the purpose of extracting minerals or oil. Welborn v. Tidewater Associated Oil Company, (10th Cir. 1954), 217 F.2d 509; Burden v. Gypsy Oil Co., 141 Kan. 147, 40 P.2d 463. Nor is a life tenant entitled to all of the royalties. Welborn v. Tidewater Associated Oil Company, supra; Brandenburg v. Petroleum Exploration, 218 Ky. 557, 291 S.W. 757. And a bonus for a lease belongs to the remaindermen of the life tenant. Andrews v. Brown, (Tex.Civ.App. 1926), 283 S.W. 288. Yet if the support of Almira Adams so required, the 1938 court order allowed the trustee to so invade the corpus. We therefore conclude that, while Almira Adams did not possess a fee simple

absolute, she was granted more than a life estate.

The instrument creating what the court termed "really a life estate" and the estate of the remaindermen is the order in cause No. 3160. In his memorandum of February 18, 1938, Judge McGhee stated:

"Her interest is really that of a life tenant but in view of the intent of the parties at the time the deeds were made to her that she was to have her living from the property, the further fact that she is now of advanced age and our New Mexico statute to the effect that children owe to their parents the duty of support, she should not be held to the use of the surface only, but so much of the money received by way of bonus or rental for oil and gas leases as may be necessary for her support may be used, and if that not be sufficient then resort may be had to the royalty upon application to the court and a hearing thereon, and jurisdiction of this cause will be retained for such purpose."

In the instant case the trial court referred to cause No. 3160 and found:

" * * * The District Court in * * * [that] case entered a Final Judgment on the 8 day of March, 1938, holding that the nine children had conveyed their interest in said lands to Almira Adams so that she would thereafter hold said lands in trust for said children, Mrs. Adams to have a comfortable living from said lands and the remainder to be distributed in equal shares to the nine children. In order to carry out the trust, the District Court in said judgment appointed a trustee to hold title to said lands and gave him power to execute surface and oil and gas leases thereon. The trustee was directed to care for Mrs. Adams during her lifetime without regard to whether the monies necessary for such care came from the surface estate or from oil and gas leases or from the sale of minerals. All transactions of the trustee being required, of course, to be made only after approval of the Court."

It is clear to us that the order in cause No. 3160 intended to provide for the so-called "life tenant" even to the extent of using the corpus, if necessary.

It would appear doubtful that our statute permits a life tenant, or a life tenant with some additional interest less than a fee simple owner, to sever a water right. However, in determining the question before us it is unnecessary to decide the issue of whether the word "owner," as used in our statute, means a fee simple owner or whether a person who holds something more than a life tenancy, but less than a fee simple owner, comes within the purview of the word "owner."

At common law, a tenant in common, who has made permanent improve-

ments as distinguished from ordinary repairs upon the common property, cannot recover from his cotenant any part of his expenditure, unless they were made at the request or with the consent of the latter. Cosgriff v. Foss, 152 N.Y. 104, 46 N.E. 307, 36 L.R.A. 753. Later, when courts of equity entered to grant sales in partition, the courts insisted that he who seeks equity must do equity. Cosgriff v. Foss, supra. Now the rule appears to be that a cotenant acting in good faith and for the purpose of honestly bettering the property, and not for the purpose of embarrassing his cotenants or encumbering the estate or hindering partition, will be entitled to compensation to the extent that his substantial and useful improvements have added to the value of the common property. Hunt v. Harris, 149 Ga. 225, 99 S.E. 884; Johnson v. Hendrickson, 71 S.D. 392, 24 N.W.2d 914.

 Thus in every jurisdiction where the action for partition has been considered as one calling for equitable interposition and relief, it has been uniformly held that an improving cotenant, who has in good faith enhanced the value of the common remainder estate, should be reimbursed for the value of such improvements upon a sale in partition, and the fact that such improvements were made by a tenant in common in reversion, during the previous life estate, is not a bar to such contribution by the co-

remaindermen upon the death of the life tenant. Anno. 1 A.L.R. 1189 and (d) at 1192; supplemented by 122 A.L.R. 234, § II(a) (5) at p. 241, and § II(c) (3) at p. 242. See also, Anno. 98 A.L.R. 859.

The reason for the rule appears to be that when the improving tenant in common improves and enhances the value of the common estate, and his cotenants are not injured in any way, or hindered from having partition, they should not be permitted to take advantage of improvements which enrich the common property, and to which they have contributed nothing.

 Generally, a life tenant, or one claiming under him, cannot claim reimbursement for improvements made to the property. But, according to the majority view, if the improver, even though a life tenant or claiming under a life tenant, is one of the remaindermen and had an interest in remainder, the fact that the improvements were made under an interest by or through the life tenant does not deprive him of the right to an equitable adjustment to the extent of the value by which the common property has been enhanced by the improvements, where no circumstances of bad faith debar him. 98 A.L.R. 860.

The findings of fact of the trial court and the judgment entered pursuant thereto gave the remaindermen the option to sell the real estate in partition, allowing the remaining cotenant the value of her improvements or

to permit her to remove them. The remaindermen elected in writing to permit removal of the water right. This is tantamount to a consent of the fee simple owners to a severance of the water right from the land, within the meaning of § 75–5–22, supra.

The judgment works no injustice in this case, because all the remaindermen had before the improvements by the cotenant in remainder was the land without water. They are only entitled to have land without water allotted to them in partition, or the value of such land without water as sold.

Under the 1938 judgment in cause No. 3160, Almira Adams was assured of support, even if the corpus of the estate had to be invaded to provide such support. The remaindermen were not prejudiced by having Almira Adams provide for her support through an arrangement which would allow a lessee to bring water to the lands, care for Almira Adams, and then permit the lessee to remove the improvements at any time, or at a reasonable time after the termination of the lease.

Appellee, the lessee in this case, proceeded under the terms of the lease and acted in good faith in making the improvements and, no circumstances of bad faith appearing, the trial court was correct in making an equitable adjustment as it did in its findings and judgment.

The judgment of the trial court is affirmed.

It is so ordered.

NOBLE and COMPTON, JJ., concur.