CASE 36—ACTION FOR AN INJUNCTION—MARCH 13.

# Herr, &c., v. Central Ky. Asylum.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

.JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. AFFIRMED.

INJUNCTION—REMEDY AT LAW—ACQUIESCENCE IN ERECTION OF DAM.

Held: 1. As an action lies against a charitable institution of the State to recover damages for an injury to plaintiff from the pollution by defendant of a stream upon which plaintiff's land borders, and it must be presumed that the Legislature would make provision for the payment of any judgment which plaintiff might obtain in such an action, the existence of this remedy at law would seem to be a sufficient reason for denying plaintiff an injunction restraining defendant from continuing the nuisance.

2. Where the owner of land bordering on a stream permitted a charitable institution of the State, without objection, and at great expense, to erect dams across the stream above plaintiff's land, with knowledge of the fact that the institution had for many years maintained a sewer, through which it emptied its slops and offal into the stream at a point between the dams and plaintiff's land, plaintiff's acquiescence precludes his right to an injunction restraining defendant from maintaining either the dams or the sewer, especially as the injury to defendant and the public from granting the injunction would be out of proportion to the injury to plaintiff from the continuance of the nuisance.

PRYOR & SAPINSKY, ATTORNEYS FOR APPELLANT.

This case comes to your honors for the second time; the first appeal being taken in 1894 and reported in 17 Ky. Law Rep., p. 320. This action is instituted by Mary Herr and her three children asking an injunction against the asylum to compel it to abate what appellants contend is a nuisance, arising out of the act of the asylum in damming up Goose creek at two points in such a way as to prevent and interfere with the proper flow of the water down that creek, which passes through the farm of appellants. This creek is anywhere from five to twenty feet wide and from one to three feet deep, and during the wet sea-

son has a continual flow of water, and does not become the least offensive to appellants until the dry season of the year. Into this creek, and above the farm of appellants, the asylum empties all of its refuse matter and offal and slops. As long as the creek is high these slops are carried off into the Ohio river some six or seven miles below, but during the dry season when the flow of the creek is insufficient, by reason of these dams, to carry off the offal and slops from the asylum, it becomes almost unbearable and practically destroys the peace and comfort of the appellants and renders entirely useless what little water there is in the creek back of their farm. The asylum, in its plea, relies upon the necessity of the institution for the building of dams for the use of the water for the asylum, and for storing it in lakes so as to be used in times of low water to carry off the offal, and further relies upon the statute of limitation by the acquiescence of the appellants for more than five years in the use thereof before bringing this suit, to which the appellants plead an estoppel on the ground that those in charge of the asylum have repeatedly and continually promised to remedy the wrong, but have failed to do so, and should not now be allowed to say that the appellants have slept on their rights and have no standing in court. We claim that the rights of these parties is elementary and is well laid down in Kent's Commentaries, vol. 3, star page, 435.

CARROLL & CARROLL and ALBERT S. BRANDEIS, ATTORNEYS FOR APPELLEE.

1. If a party is guilty of laches in applying for an injunction he may thereby forfeit his claim to that remedy; and if by his laches he has made it impossible or very difficult for the court to enjoin his adversary without inflicting great injury thereby, an injunction must be refused, and the party left to his remedy at law.

2. An injunction should not be granted when it would be productive of great hardship or oppression; or great public or private mischief; or where the injury to the defendant would be infinitely greater than the benefit to the plaintiff.

3. Where a party has an adequate remedy at law a court of equity should not interfere by injunction.

### AUTHORITIES CITED.

Question of laches. Clark v. Cambridge, &c., Co., 45 Neb., 798; Fisk v. Hartford, 70 Conn., 720; 66 Am. St. Rep., 147; Pomeroy on Eq. Jur., secs. 816, 817; Atty. Genl. v. N. Y. R. R. Co., 9 C. E. Green, 49; High on Injunctions, sec. 786; Southard v.

Morris, &c., Saxt., 518; Logansport v. Uhl, 99 Ind., 531; Smith v. Clay, Amb., 645; Calhoun v. Millard, 121 N. Y., 69; Atty. Genl. v. N. Y. R. R. Co., 24 N. J. Eq., 49; Traphagen v. Jersey City, 29 N. J. Eq.; 206; Swaine v. Great Northern Ry. Co., 9 Jurist (N. S.), 1196; Pa. Ry. Co.'s Appeal, 125 Pa. St., 202; Hayward v. National Bank, 96 U. S., 611; Bassard v. The Company, 47 N. H., 439; Lochdale Canal Co. v. King, 2 Simon (N. S.), 78; Wood v. Sutcliffe, 2 Simon (N. S.), 163; Birmingham Canal Co. v. Lloyd, 18 Veasey, 515; Ripon v. Hobart, 3 Milne & K., 169; Binney's Case, 2 Bland, Chanc., 99 (Md.).

Has the plaintiff a remedy at law. Hauns v. Central Ky. Asylum, 20 Ky. Law. Rep., 246.

Equity should not interfere. Ft. Worth v. Crawfoard, 64 Texas, 202; Phoenix v. Commonwealth, 12 Howard's Prac., 1; Commonwealth v. Reed, 34 Pa. St., 275; Morris Essex R. R. Co. v. Prudden, 20 N. J. Eq., 530.

OPINION OF THE COURT BY JUDGE BURNAM—AFFIRMING.

The Central Kentucky Lunatic Asylum is the largest of the three charitable institutions provided by the State of Kentucky for the care and treatment of the insane. It was located in 1872 upon a tract of 600 acres of land near Lakeland, in Jefferson county, at a point some six or seven miles distant from the Ohio river. A water course known as "Goose Creek," which is about ten feet wide and from one to two feet deep, runs through the territory of the asylum, close to the buildings erected thereon, in a westwardly direction, and empties into the Ohio river. Soon after the location of the asylum a sewer was constructed, through which the slops and offal of the asylum were emptied into Goose creek above the lands of plaintiff, and it has been continuously used from that time. From the date of the original location in 1872 the State has been continuously enlarging and improving the asylum, until it has expended in building alone more than $500,000; and it now furnishes accommodations to more than 1,200 lunatics, in addition to necessary attend-

ants.  Early in the history of the institution an adequate
water supply for its use became a matter of deep concern,
and it was compelled to rely largely upon Goose creek to
supply this want.  The proof shows that for several
months during the dry season of the year the creek became
very low, and, for the purpose of providing against a
scarcity of water during this period, the authorities in
1887 erected a dam across the creek, by means of which
a reservoir was formed.  In 1893 they erected a second
dam across the stream, which formed a second reservoir.
Both of these dams were above the point on the creek
where the sewer emptied into it.  The appellants, Mary
Herr and her three children, owned and resided upon a
tract of 300 acres of land, lying upon both sides of Goose
creek, below the lands owned by the lunatic asylum, and
adjoining those owned by one Valentine Hauns, whose
land lies between that of the appellants and appellee.
Appellants in February, 1894, instituted this suit in equi-
ty in the Jefferson Circuit Court, in which they stated
substantially the facts hereinbefore recited, and alleged
that the emptying of the sewer from the asylum into
Goose creek, and the erection of the dams across the
stream, had rendered the stream itself a nuisance, and its
waters below the point where the sewer emptied into it
unfit for use; that an offensive odor arose therefrom, poi-
soning the water and rendering their homes disagreeable
and unhealthy—and asked the court by injunction to com-
pel appellee to tear out the dams and sewer, and to restore
Goose creek to its natural condition.  A general demurrer
was sustained to this petition, which, upon appeal to this
court, was reversed.  The opinion rendered upon that appeal
is reported in 97 Ky., 458; 17 Ky., 320 (30 S. W., 971)) (28 L.
R. A., 394).   Upon the return of the case the defendants

filed an answer. In the first paragraph they denied all of the affirmative averments of the petition. In the second they alleged that they drew no water from Goose creek except what is reasonable and necessary for the use of the institution, and that it has no other adequate source of supply, and that but for the supply of water provided by the lakes the institution itself could not be maintained, and the State would be forced to abandon the buildings and improvements erected at an enormous cost, and to provide quarters elsewhere for its unfortunate inmates. In the third paragraph they plead that the sewer complained of has been in existence and operation for more than fifteen years continuously, without any effort on the part of plaintiffs to interfere therewith, and that they had full notice and knowledge of the proposed erection of the dams and lakes complained of before they were completed by the State at great expense, and offered no objection thereto; that to grant the relief sought by plaintiffs would inflict enormous damage upon the defendants, wholly out of proportion to the alleged injury to themselves.

The evidence in the record, we think, shows that for several months during the summer and early fall the waters of Goose creek are polluted below the point where the sewer empties into it to such an extent as to render it unfit for stock water, and that at times an offensive odor arises from the stream, which to a large extent renders the home of plaintiff disagreeable, and that the stream itself has a filthy and disagreeable appearance. There is no evidence to support the claim that any epidemics or diseases result therefrom. While, on the other hand, it is conclusively shown that it is absolutely necessary for the use of the asylum that the lakes should be maintain-

ed, in order to furnish a sufficient water supply for the use of the institution, and that if they were taken out the buildings and present site of the asylum would have to be abandoned, at least until some means of supplying the necessities of the institution in this particular could be devised. It is also shown that engineers have been unable to provide any suitable or proper sewer arrangement for the one complained of, and that it has been in use in substantially the same manner for more than twenty years.

The question first to be determined under this state of facts is whether appellant has an adequate remedy at law for the injuries complained of by an action for damages, as the rule is settled that an injunction will not be granted where the remedy at law is full, adequate, and complete. It was held in Hauns v. Lunatic Asylum, 103 Ky., 562; 20 R., 246 (45 S. W., 890), that an individual could maintain a common-law action against appellee for injuries identical in character with those herein complained of, and that an execution sued out upon a judgment in such a proceeding could be levied upon the property of appellee, unless the sale of such property would render the corporation wholly unable to care for the insane under its charge. And, even if it be conceded that appellee had no property which came under this head—that would be liable to such an execution—we think it must be conclusively presumed that the legislature would make suitable provision for the payment of such a judgment, as it is in reality a claim against the State, when it had been properly ascertained and determined in the courts of the State. But, even if it be conceded that appellants' claim for an injunction could not be defeated on this ground alone, "it is a rule, practically without exception, that a court of equity will

not grant relief by injunction where the party seeking it, being cognizant of his rights, does not take those steps to assert them which are open to him, but lies by and suffers his adversary to incur expenses which would render the granting of the injunction a great injury to him. This rule is especially applicable where the granting of an injunction will operate injuriously to the public as well as to the party against whom the injunction is sought." 16 Am. & Eng. Ency. Law, p. 366, and authorities there cited. Pomeroy, in his work on Equity Jurisprudence (sections 816, 817), announces the general doctrine as follows: "Acquiescence is an important factor in determining equitable rights and remedies, in obedience to the maxims, 'He who seeks equity must do equity, and he who comes into equity must come with clean hands.' . . . Acquiescence in the wrongful conduct of another by which one's rights are invaded may operate often, upon the principles of and in analogy to estoppel, to preclude the injured party from obtaining many distinctively equitable remedies to which he would otherwise be entitled. This form of *quasi* estoppel does not cut off the party's title, nor his remedy at law. It simply bars his equitable relief, and leaves him to his legal action alone." Mr. High, in his work on Injunctions (section 786), says: "He who seeks relief against a nuisance must show due diligence in the assertion of his rights; and where complainant has allowed the defendant for a long period to continue in the erection of his obnoxious structure, at great expense, equity will not interfere. . . . Complainants who have long slept on their rights will not be allowed to enjoin the nuisance, and thus put themselves in a position from which their own laches has debarred them." This principle was applied in South-

ard v. Banking Co., 1 N. J., Eq., 518; City of Logansport v. Uhl, 99 Ind., 531; Easton v. Railroad Co., 24 N. J. Eq., 49; Traphagen v. Mayor, etc., 29 N. J. Eq., 206; Swaine v. Railway Co., 9 Jur., (N. S.) 1196. It has also been frequently applied by this court. See Murphy v. Ice Co., 50 S. W., 835. An injunction ought not to be granted where the benefit secured by it to the party applying therefor is comparatively small, while it will operate oppressively and to the great annoyance and injury of the other party and to the public, unless the wrong complained of was so wanton and unprovoked as to properly deprive the wrong-doer of all consideration for its injurious consequence. See Jones v. Mayor, etc., 11 N. J., Eq., 452. In this case appellants stood by for more than fifteen years, and permitted the defendant to spend enormous sums of money, adding to the improvements on the land, with a full knowledge and complete remedy at law for all of the injuries complained of.; and they have at this late day no equitable standing in court, and their petition was properly dismissed. Judgment affirmed.