## Love v. McCandless, et al.

(Decided February 10, 1914.)

### Appeal from Metcalfe Circuit Court.

1. Homestead—Right of Widow to—Abandonment.—Under Section 1707 of the Kentucky Sttatutes the widow is only entitled to a homestead as long as she occupies the same by herself or tenant, and she may forfeit the homestead right by selling it or by abandonment.

2. Homestead—Infant Widow.—The mere abandonment by an infant widow of the occupancy of her homestead either by herself or tenant does not operate to deny her the right, on or before arriving at age, to assert her right to a homestead.

3. Homestead—Abandonment—Acts that Evidence.—The abandonment by a widow of her homestead may be shown by her acts and conduct independent of any writing. The fact of abandonment may be shown by parol evidence.

4. Homestead—Infant Widow Removing to Another State—Acts of Abandonment.—Where an infant widow, who was entitled to a homestead, removed to another Sate and when she became of age by the laws of that State, although under twenty-one, sold her homestead right, this act, in connection with the fact that she had never occupied the premises as a homestead, worked an abandonment of it, and after she became twenty-one she could not assert her right to a homestead.

EUGENE HUBBARD for appellant.

V. H. BAIRD and BAIRD & RICHARDSON for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This is a homestead case and involves the question whether or not the appellant, Nora Love, is entitled to a homestead in a house and lot situated in Metcalfe County, Kentucky. To understand the issues it will be necessary to make quite an extended statement of the facts.

The first husband of Nora Love was James A. McCandless, who died intestate in Metcalfe County in August, 1906. At the time of his death his wife, now Nora Love, was about sixteen years of age. Soon after the death of her husband she moved with her father to the State of Illinois, and in May, 1907, married Junius Love, her present husband. After her marriage to Love, who was a commercial traveler, she traveled and lived in different States, but at no time did she return to Metcalfe County to live or make her home, nor did she at any time after the death of her first husband by herself or a tenant occupy the homestead now in controversy.

It appears that within a few months after the death of Nora Love's first husband a suit was brought in the Metcalfe Circuit Court to settle his estate, and in this suit, to which Nora Love as his widow was made a party, there was a judgment in February, 1907, adjudging that she was entitled "to hold the house and lot mentioned as the property of decedent as a homestead." An appeal was taken by some of the parties from this judgment, and on this appeal her right to a homestead was confirmed.

After this, in May, 1907, she married Junius Love, and in October, 1907, being then a resident of Illinois, she and her husband executed, acknowledged and delivered to R. E. McCandless an instrument of writing conveying to him, in consideration of two hundred dollars, all her right, title and interest in the property set apart to her as a homestead. A short time after this W. L. Porter, who had been appointed by the Metcalfe County Court statutory guardian of Nora Love, then McCandless, brought suit in the Metcalfe Circuit Court to settle his accounts as guardian. In this suit to which she was a party he averred that Nora Love, who had prior thereto married Junius Love, was over eighteen years of age, and that both she and her husband were residents of the State of Illinois, and that under the laws of that State a female married woman over the age of eighteen was legally capable of receiving any and all de-

mands due her from any source, and qualified to receipt for the same and act as a single woman and he asked that he be permitted and ordered by the court to pay to her the amount in his hands as guardian, which included the two hundred dollars paid to her for her homestead interest, as well as some other estate that had come into his hands as gaurdian. In this suit a judgment was entered reciting the fact that Nora Love was then a resident of the State of Illinois, over the age of eighteen years, and capable of contracting and receiving money and executing receipts for the same, and Porter as her guardian was directed to pay to her the funds in his hands, and pursuant to this order Porter, as guardian, did pay to her the amount to which she was entitled.

After this, and in 1911, W. E. McCandless, a brother of R. E. McCandless, the lessee of Nora Love, bought out the interest of some of the heirs of James McCandless, deceased, in this house and lot, and, proceeding on the theory that Nora Love had forfeited her right to a homestead by her removal to another State as well as by her sale of her right, title and interest in the property asked that he be adjudged the owner of the property.

To this suit, which was filed in 1911, Nora Love, who was made a defendant, filed her answer in 1912, in which she set up that she had only arrived at the age of twenty-one in 1911, and that she did not know anything about the suit in which a homestead was allotted to her or that she was entitled to a homestead in the property, or about the suit brough by her guardian asking permission to pay to her the money in his hands, or the judgment entered in that suit. She further set up that, although she had lived in Illinois and different States and had never occupied as a home or otherwise the property in question, she claimed it as a homestead and asked that she be adjudged entitled to it as such. She further denied that she intended by the writing executed in October, 1907, to divest herself of her homestead right in the property, and insisted that upon her arrival at twenty-one she had the right to repudiate this writing, which she did.

On hearing the case the lower court adjudged that she was not entitled to a homestead in the property, and from that judgment she prosecutes this appeal.

It must be presumed, nothing appearing to the contrary, that she was properly a party to the suit brought to settle the estate of her first husband in January, 1907,

and further that she was properly a party to the proceeding instituted by her guardian, W. L. Porter, in which he sought and obtained the judgment of the Metcalfe Circuit Court directing him to pay to her the money in his hands as guardian.

We have then this condition: Nora Love, in a suit to which she was regularly a party, was adjudged a homestead in the property of her husband, McCandless, in January, 1907, and, after this and while a resident of the State of Illinois, she conveyed to R. E. McCandless, by duly executed deed, all her right, title and interest in the property set apart to her as a homestead. We have the admitted fact that she did not at any time after 1907 reside in Metcalfe County or occupy this property as a homestead either by herself or tenant, and that she had been continuously a non-resident of the State. And the further admitted fact that in a suit to which she was a party, brought in a court of this State, having jurisdiction of the subject matter of the action, it was adjudged that she was a resident of the State of Illinois and under the laws of that State capable of contracting for herself, and by virtue of this judgment she was enabled to and did receive the two hundred for which she sold her right, title and interest in the property.

If Nora Love at the time she sold her right of homestead in this property to R. E. McCandless, and received therefor two hundred dollars, had been twenty-one years of age, there would be no difficulty in determining that by this act, in connection with her removal from the State, she abandoned her homestead right. But as she was not twenty-one when these things occurred the real question in the case is, did her removal to Illinois in 1906 while she was an infant, and her sale of her homestead right while she was under twenty-one, and her receipt under the circumstances stated of the proceeds of this sale, have the effect of depriving her of the right when she became twenty-one to assert a homestead in this property?

In section 1707 of the Kentucky Statutes it is provided that "The homestead shall be for the use of the widow so long as she occupies the same, and the unmarried infant children of the husband shall be entitled to a joint occupancy with her until the youngest unmarried child arrives at full age. But the termination of the widow's occupancy shall not affect the right of the children; but said

land may be sold, subject to the right of said widow and children, if a sale is necessary to pay the debts of the husband.''

Under this statute the right of the widow to a homestead depends on her occupancy of it either by herself or by her tenant. She has only a right of occupancy, and when she voluntarily surrenders this right of occupancy, by abandonment or by the sale of her right of homestead, this works a forfeiture of her homestead right and terminates it. This was expressly decided in Freeman v. Mills, 101 Ky., 142; Bryant v. Bennett, 22 Ky. L. R., 1866; Jones v. Green, 26 Ky. L. R., 1191; Clay v. Wallace, 116 Ky., 599.

It is, however, insisted by counsel for Nora Love that an infant widow is incapable of abondoning her right of occupancy and, therefore, although the acts and conduct of Nora Love were sufficient to work an abandonment if she had been an adult, they did not have this effect on account of her infancy. There would be much force in this position if Nora Love had continued a resident of this State after the death of her husband, as under the law of this State she would be treated as an infant until she arrived at the age of twenty-one, and we are inclined to the opinion that under a liberal construction of the homestead statute the abandonment by an infant widow of the occupancy of her homestead, either by herself or tenant, would not operate to deny her the right upon her arrival at age to assert her right to a homestead, but this favorable construction of the statute does not operate to save this homestead for Nora Love. After she became a resident of Illinois and by the laws of that State was freed from the disabilities of infancy, she then elected to sell her homestead right of occupancy, and by this act of election abandoned her right to a homestead. Whether or not the acts of a widow will amount to an abandonment of her homestead right are questions of fact, to be determined by the facts of each particular case. Taree v. Spriggs, 149 Ky., 20.

Nor is it necessary that these acts should be manifested by any instrument of writing on the part of the widow. They may be shown by her acts and conduct independent of any writing. The fact that a widow has abandoned her homestead may be shown by parol evidence, and so it is not necessary to consider the effect of her written sale and conveyance of her homestead

right other than as an evidential act declaring her intention to abandon it.   This intention she had the right to exercise and give binding effect to under the law of Illinois where she then resided, and we think this sale, in connection with her continued absence from her homestead, clearly worked the abandonment of her homestead right.

The judgment of the lower court is affirmed.