## Brandenburg v. Petroleum Exploration, et al.

(Decided February 25, 1927.)

### Appeal from Lee Circuit Court.

1.  Homestead—Homestead Rights are Statutory (Ky. Stats., Section 1707).—Homestead rights are creatures of statute, and the statutes creating them, such as Ky. Stats., section 1707, determine their extent.
2.  Homestead—Homestead Statutes are Intended to Afford Home for Person for Whom Right is Created.—The object of all homestead statutes is primarily to afford a home for the person in whose interest the right is created.

3.   Homestead—Life Estate—"Life Estate" is Freehold Continuing During Life of Some Person, and Includes all Parts of Land Included in Remaindermen's Interests; Whereas "Homestead" Includes Only Right to Use Surface of Land.—A "life estate" is a freehold interest in land, the term of which continues during the life of the owner or of some other person, and includes all parts of the land included in the interests of the remaindermen, the minerals under the surface as well as the surface; whereas a right of "homestead" includes only right of occupancy and use of the surface of the land.

4.   Life Estates—Life Tenant has Same Interest During Term as Remainderman Thereafter, Except Life Tenant May Not Commit Waste.—Life tenant has the same interest in the land during the existence of his estate that the remainderman has after obtaining possession, except that life tenant may not commit waste.

5.   Life Estate—Life Tenant is Entitled Only to Income from Royalties from Mining Lease on Property Not Impressed with Character of Mining Property.—Where character of mining property has not been impressed on land, and life tenant and remainderman join in mining lease, in absence of agreement, life tenant is entitled to no part of the royalties, but only to the income therefrom.

6.   Homestead—Homestead Statutes do Not Create Estate in Land, but Only Give Right of Use (Ky. Stats., Section 1707).—Homestead statutes, such as Ky. Stats., section 1707, do not create an estate in land, but only give owner of homestead the right to occupy and use it, free from disturbance by heirs, creditors, or others.

7.   Injunction—Injunction Will Not be Granted which Will Operate Inequitably, Oppressively, or Where Injury is Readily Compensated in Damages and Injunction Will Cause Great Injury.—Equity will not grant an injunction which will operate inequitably or oppressively, or where the injury may be readily compensated in damages and injunction will subject defendant to great inconvenience and loss.

8.   Homestead—Owner of Homestead Interest Held Not Entitled to Oil Produced from Land, Nor to Proceeds Thereof, Nor to Operate Wells.—Intestate's widow, having homestead interest in land, on which children executed oil and gas lease, held not entitled to oil produced or proceeds thereof, nor to take over and operate the wells during the continuance of her homestead interest, in view of her right being merely that of use of surface of land.

9.   Mines and Minerals—Owner of Homestead Interest Held Not Entitled to Enjoin Operation of Oil Wells, Where She Permitted Drilling of Wells, and Great Injury Would Result to Defendants.— Owner of homestead interest in land, on which children executed oil and gas lease, held not entitled to enjoin lessees, where she permitted them to invest large sums of money in drilling wells, and they paid her for injuries incident to the operation of the

wells, and granting of injunction being of comparatively small benefit to her and great injury to the lessees.

E. L. McDONALD, JOHN D. CARROLL and E. B. ROSE for appellant.

O'REAR, FOWLER & WALLACE and CHESTER GOURLEY for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Louisa Brandenburg, is the widow of Larkin Mays, who died intestate on June 8, 1895, leaving surviving him the appellant, his widow, and four children who were infants at the time of his death. He owned a tract of land in Lee county which was worth less than $1,000.00 at the time of his death and which the appellant continued to, and still does, occupy as a homestead. After the children attained their majority they executed an oil and gas lease on this land, this lease now being owned by the appellees.

The appellees entered upon the land and drilled wells which are producing oil and gas. Appellant brought this action setting up these facts and alleging that no mines or wells were drilled on the land during the lifetime of her husband, Larkin Mays, nor did he lease or grant the right to open such mines or drill such wells, nor had she authorized such operations, and that the defendants had no authority or right to disturb or interfere with her homestead rights; that by virtue of her homestead rights she is entitled not only to an undisturbed occupancy of the land but to all the issues and profits therefrom as long as her homestead rights continue, including the right to operate the wells that had been drilled and to have an accounting for and to receive the value of all oil and gas that had been taken from the land. She asked that the defendants be enjoined and restrained from entering upon the land or operating thereon for the production of oil or gas during the continuance of her homested rights and that they be required to account for all oil and gas that had been produced and taken therefrom.

A demurrer to the petition was sustained, and the plaintiff refusing to plead further judgment was entered dismissing her petition and from that judgment she appeals.

In the petition as originally filed was an averment that the defendants in their operations had destroyed valuable fruit trees, perennial shrubs and crops and had interfered with her use of the land for crops and as a home to her damage in the sum of $700.00, and she asked judgment for that amount in addition to the injunctive relief. It appears that this averment was withdrawn from the petition after appellant and appellees agreed upon the amount of damages for such injuries that had theretofore been done or were thereafter reasonably incident to the operation of the wells.

The sole question left to be determined is what interest, if any, has appellant in the oil and gas that has been or will be produced from the land occupied by her as a homestead. The appellant contends that her rights in the homestead are the same as those of a life tenant and that the adult children of her deceased husband could not execute an oil and gas lease on the homestead property which would invest the lessees thereunder with the right to produce oil therefrom during her life or occupancy of the property; and that since wells have been drilled by the lessee under such a lease, and oil has been produced, she is entitled to all of the oil or the proceeds therefrom. And she further contends that she is entitled to an injunction against the appellee enjoining it from operating under the lease from her adult children and that she is entitled to continue the operations for oil and gas and to appropriate to her own use all oil and gas produced during her life or occupancy of the homestead.

Section 1707, Kentucky Statutes, provides:

> "The homestead shall be for the use of the widow so long as she occupies the same, and the unmarried infant children of the husband shall be entitled to a joint occupancy with her until the youngest unmarried child arrives at full age. But the termination of the widow's occupancy shall not affect the right of the children; but said land may be sold, subject to the right of said widow and children, if a sale is necessary to pay the debts of the husband."

Homestead rights are creatures of the statutes and the statutes creating them must be looked to in order to determine their extent. The object of all homestead statutes

is primarily to afford a home for the person in whose interest the right is created. In Miles v. Hall, 12 Bush 107, the court said:

"The humane and politic purpose of the legislature was to secure homes for families, and this can as well be accomplished by holding that the homestead exemption continues only so long as it is necessary to accomplish the purpose intended. And such has since been declared to be the legislative intention."

In Evans v. Evans' Administrator, 13 Bush 587, it was said:

"The whole tenor of the act shows that the intention of the legislature was not to enable the debtor to hold property free from the demands of his creditor, but to protect him in the enjoyment of his homestead so long as the realty exempted is actually used as a home for himself and family. The act did not create a new and inalienable estate in the debtor but it merely exempted a portion of his land from coercive sale by his creditors so long as his occupancy of same should continue. (Brame and Wife v. Craig, 12 Bush 404). And this exemption, and nothing else, continued after the death of the debtor Evans for the benefit of his widow and children, enlarged only to the extent that the temporary absence of the widow, she still holding possession by her tenant or agent, will not forfeit or terminate her claim to the homestead."

In Gowdy v. Johnson, 104 Ky. 648, it was said:

"We thus see that the thing attempted to be protected from sale is the land—the homestead itself. The object of the statute, as of all statutes of like character, is not so much to exempt a certain sum of money from subjection to debt or land of a certain value, but it is intended to protect the homestead itself—the dwelling house and appurtenances —to the end that the citizens of the commonwealth may be home owners. The matter of value is a mere incident—a proper one, it is true—as our lawmakers have conceived it to be the better rule that some limitation in value should be applied."

Appellant relies on Miller v. Mills, 7 Ky. Law Rep. 221, as authority for her contention that a homestead right is a freehold estate, but that case involved the right of infant children, and the court in making the statement that a homestead right is a freehold estate no doubt had in view the remainder interest of the children. We have been unable to find any domestic case that holds that a homestead right is the same as a life estate subject to being defeated by abandonment or that it amounts to a freehold estate. The abstract of the opinion in Schmidt v. Oliges, 6 Ky. Law Rep. 297, is as follows:

"Neither the homestead nor its proceeds is an estate for life, nor can either be encumbered by liens unless those liens have been created by the debtor in the mode pointed out by the statute. It is only where the owner of the homestead dies and it passes to his wife and children that the creditor of the debtor may subject it, subject to its occupancy by the family."

And in the recent case of Demarest v. Allen, 189 Ky. 32, 224 S. W. 458, this court said:

"It must be remembered that our homestead statutes do not create an estate in land but merely accord to the owner, who is a housekeeper with his family, the privilege of occupying it as against his creditors; and it is this exemption and nothing else that continues after the death of the debtor for the benefit of his widow and children, enlarged only to the extent that the temporary absence of the widow will not forfeit or terminate it where she still holds possession by a tenant or agent."

And in Charboneau v. Hart, 211 Ky. 204, 277 S. W. 242, it was said:

"It is true the homestead right in this state is not an estate in land and is merely a right of occupancy (Demarest v. Allen, 189 Ky. 32, 224 S. W. 458); but the statute (1702) in granting and defining it not only states that it shall be exempt from liability for debt but exempt also from sale under execution, attachent or judgment except to foreclose a mortgage or purchase money lien. Hence by the very terms of the statute such right is exempt from

sale by judgment in an action such as this. Not only so, but we uniformly have held that the homestead of decedent continues after his or her death for the benefit of the surviving spouse and exists as well against the heirs of the decedent not residing on the land as against creditors.''

Recognizing the difference between a life estate and a homestead exemption, it was said in Wilson v. Devasher, 204 Ky. 408, 264 S. W. 1057:

"Evidently the court confused a dower estate with a homestead exemption on the theory that where a homestead is allotted to a surviving spouse and afterwards enhances in value the original valuation must control. But that rule has no application to a dower or life estate. When assigned, a dower interest becomes a life estate and carries all the rights and is subject to all the liabilities incident to such estates."

Other cases to the same effect are: Love v. McCandless, 157 Ky. 352, 163 S. W. 197; Jones v. Green, 83 S. W. 582; Turner v. Browning's Admr., 107 S. W. 318; Overby v. Williams, 170 Ky. 140, 185 S. W. 822; Evansville Coffin Co. v. Sumner, 189 Ky. 839, 226 S. W. 363.

A life estate is a freehold interest in land the term of which continues during the life of the owner or of some other person and extends to and includes all parts of the land included in the interests of the remaindermen. On the other hand, a right of homestead includes only a right of occupancy and use of the surface of the land. The life tenant has the same interest in the land during the existence of his estate that the remainderman has in it after it comes into the latter's possession, except that the life tenant may not commit waste. He owns the land during the term of the life estate but has not the right to remove any part of the corpus, to the damage of the inheritance. Where the character of mining property has not been impressed upon land the life tenant and remaindermen may join in a lease, but unless a division of the royalties from the mining operations is agreed upon, the life tenant can take and consume no part of the royalty but is only entitled to the income therefrom, so that at the expiration of his estate the entire corpus of the prop-

erty shall go undiminished to the remaindermen. Crain v. West, 191 Ky. 1, 229 S. W. 51; Meredith v. Meredith, 193 Ky. 192, 235 S. W. 757. But this is true for the reason that the life tenant's interest during the existence of his estate extends to the minerals under the surface as well as to the surface itself. On account of the differ-- ence which we think exists between the life estate and a right of homestead, we do not think this rule should be extended to apply to homesteads. The cases cited above clearly hold that the Kentucky homestead statutes do not create an estate in land, but only give to the owner of the homestead the right to use, occupy and enjoy it as a home, such use, occupancy and enjoyment to be free from disturbance by the heirs, creditors or others. In the instant case the appellant could have prevented the ap- pellees from entering upon the land and interfering with her use of the surface, but she permitted them at great expense to enter thereon and explore for oil and gas and only brought this action after oil in paying quantities had been discovered. She accepted payment for all dam- ages to her as the owner of the homestead resulting from the operations of appellees, and in addition she seeks to enjoin appellees from operating the wells that have been drilled and to appropriate all oil that has been produced or the proceeds thereof and all oil that may be produced in the future during her life or occupancy of the home-- stead. It is a well recognized rule that a court of equity will not grant an injunction when it will operate inequi- tably or oppressively or where the injury complained of may be readily compensated in damages, while to restore things as they were before the acts complained of would subject the other party to great inconveniences and loss. The rule is thus stated in 32 C. J. 77:

"Subject to one well-established exception, relating to suits to enjoin breach of restrictive cove- nants as to the use of land, and except in cases con- trolled by positive statutory enactments, the general rule is, that on application for an injunction the court will in the exercise of the wide discretion with which it is vested take into consideration the relative inconvenience or injury which the parties will sus- tain by the granting or refusal of the application for an injunction, unless in cases where the wrong com-

plained of is so unwarranted and unprovoked as properly to deprive the wrongdoer of the benefit of any consideration as to its injurious consequences. The rule is laid down in a large number of decisions that when the issuance of an injunction will cause great injury to defendant, and will confer no benefit or very little benefit in comparison upon complainant, it is proper to refuse the injunction, especially where the right is doubtful, or where money damages will compensate plaintiff, or where the wrong may be otherwise redressed, or where complainant can at comparatively slight cost protect himself.''

In Herr v. Central Ky. Asylum, 110 Ky. 282, 61 S. W. 283, this court said:

"An injunction ought not to be granted where the benefit secured by it to the party applying therefor is comparatively small, while it will operate oppressively and to the great annoyance and injury of the other party and to the public, unless the wrong complained of was so wanton and unprovoked as to properly deprive the wrongdoer of all consideration for its injurious consequences.''

In view of the nature of appellant's interest in the land she is not entitled to the oil or the proceeds thereof that has been produced nor is she entitled to take over and operate the wells that are producing and appropriate the oil that may be produced during her life or her occupancy of the homestead. As she has been paid for the damages resulting from the appellees' interference with her use of the homestead, the granting of the injunctive relief asked for would be of comparatively small benefit to her and would operate to the great injury of the appellees. We do not mean to say, however, that she will not be entitled to damages for any additional injuries that may result to her in the future from appellees' operations and for which she has not been paid.

For the reasons indicated the judgment is affirmed.