# Deering et al. v. Stites et al.

(Decided Dec. 11, 1934.)

(As Modified on Denial of Rehearing Feb. 1, 1935.)

404

GREENBERRY SIMMONS for appellants.

DODD & DODD, EDWARD P. HUMPHREY, MARVIN TAYLOR, GARNETT & VAN WINKLE, ARTHUR BENSINGER, ROBERT VAUGHAN and HENRY TILFORD for appellees.

OPINION OF THE COURT BY SPECIAL JUDGE FAUREST— Affirming.

The National Bank of Kentucky, hereinafter called the bank, was a national bank engaged in the banking business in Louisville, Ky., and the Louisville Trust Company, hereinafter called the trust company, was a corporation, organized under the laws of Kentucky and doing a general trust business in that city. Some of the stockholders of these organizaztions conceived that it would be to their mutual interests to effect a close co-operation between the two institutions by pooling their stock.

With this in view, a written agreement of date April 22, 1927, was prepared, under and by which such holders of the capital stock of each of said corporations as might thereafter unite in said agreement, by signing it or by depositing their stock as therein provided, agreed to transfer to six trustees, named therein, their respective shares of stock. It was provided in said agreement that each shareholder who became a party

to the agreement should receive one participation certificate for each share of stock transferred to the trustees, and that the trustees should hold all assets which should come to their hands thereunder "as one indivisible trust estate, the proportionate interest or part of each shareholder therein being represented by the certificate issued by such trustees."

The contract also provided that the members of the board of directors of the bank and of the board of directors of the trust company, from time to time, should constitute an advisory board, with such powers as therein conferred.

The trustees were given power to purchase stock in other corporations of similar character and engaged in like business, but this could be done only with the written consent of the advisory committee as to terms, price, and condition of purchase. Any stock so purchased should be paid for by participation certificates, either issued directly to the holders of the stock purchased, or sold, and the proceeds used for that purpose. The stock so acquired should become a part of the trust estate. The trustees, with the written consent of the advisory committee, could sell any stock acquired as last set out above.

The trustees were given the right to exercise all the powers of management and control over any corporation in which they should own stock, incident to the ownership of said stock, including the voting rights in the election of directors. However, the owner of any participation certificate might, by written directions given at least five days before the vote was to be cast, instruct the trustees how they should vote in the corporate meetings such proportionate part of the stock held by the trustees as his number of participation shares bore to the whole number. The contract also set out that dividends on the stocks held by the trustees should be collected by them and distributed as therein set out.

This suit was brought in the chancery branch of the Jefferson circuit court in 1933, by John S. Deering and Harvey M. Graybill, alleged trustees for themselves and Lucy W. Deering and Effie Miller, holders of 345 out of 570,550 participation shares, against the trustees under the agreement aforesaid and forty-four other

defendants, some of whom are alleged to have been directors of said bank and the others directors of said trust company, seeking to recover damages because of alleged derelictions in the performance of their duties under said agreement; and also for an accounting. They sought to prosecute the suit as a class suit for and on behalf of all holders of said participation receipts. The petition covers 79 pages of the record.

The defendants filed a written motion to strike from the petition so much thereof as sought to prosecute the action as a class suit, and also filed a special demurrer and a general demurrer to the petition. When this motion and these demurrers came on for hearing, the chancellor delivered a written opinion, and, in accordance therewith, on his own motion, ordered the plaintiffs to redraw their petition so as to conform to sections 90, 113, and 115 of the Civil Code of Practice.

On March 14, 1934, the plaintiffs tendered and moved to file their redrawn petition. The defendants objected to its being filed on the ground that it did not conform to the ruling of the court. The court permitted it to be filed as a reformed and substituted petition, but, plaintiffs' counsel being asbsent, put him on terms to appear on April 3d, to show the court that said pleading conformed to the rulings theretofore made. On that day the court struck the redrawn petition from the files because not so drawn as to make possible the joinder of issue thereon, basing its action on section 114 of the Civil Code of Practice. The plaintiffs declined to plead further, the action was dismissed, and they appeal.

The redrawn petition covers about 65 pages of the transcript, and it would unduly extend this opinion to set out in detail all of its allegations. Stripping the petition of its adjectives, and the conclusions of the pleader, the matters alleged as facts, upon which relief is sought, may be summarized as follows:

(1) That the trustees and members of the advisory committee participated in the organization of a corporation called Banco Kentucky, which corporation is alleged to have been an illegal corporation, created for the purpose of violating the Federal Reserve Act and the national banking laws.

(2) That participation receipts held by trust estates were illegally exchanged for stock in the Banco Kentucky.

(3) That formation of Banco Kentucky was to enable it to do business prohibited to national banks.

(4) That the Banco Kentucky was authorized to purchase stock in other corporations doing a banking or trust business, and thereby became a competitor of the trustees in this respect.

(5) That the trustees permitted the bank and trust company to loan large sums with Banco Kentucky stock as collateral, that James B. Brown was permitted to borrow $2,000,000 and Caldwell & Co. and its subsidiaries several millions of dollars from the bank, in violation of the excessive loan statute.

We shall consider these in their order.

It is alleged that the defendants below participated in the organization of the Banco Kentucky, a Delaware. corporation, under a plan by which the Banco Kentucky should purchase participation receipts issued by the said trustees, by exchanging two shares of Banco Kentucky stock for each participation receipt purchased. It is further alleged that the Banco Kentucky was organized to create a miniature federal reserve system, in violation of the Federal Reserve Act, and to form a chain of banks, and centralized ownership of stock in a national bank, in violation of the national banking laws. But appellants have no standing court to complain of these things, if they were true. Under the plan of organization of Banco Kentucky and for the exchange of participation receipts for stock in that company, as set up in the petition, the trustees did not exchange the stock in their hands, nor participation receipts, for the stock of Banco Kentucky. Each individual holder of a participation receipt was given the privilege of making the exchange. It was purely voluntary with him whether he would do this. It is alleged that the holders of all but 30,166 shares of the participation receipts did make the exchange; but appellants were not among that number. They retained their participation receipts. After Banco Kentucky had purchased what it acquired, it became a co-beneficiary with appellants in the trust created by the agreement of April 22, 1927. The rights of appellants under

that trust were in no wise affected, and it was immaterial to them whether the organization of Banco Kentucky or its holding of participation receipts was legal or illegal.

Likewise, appellants cannot complain of the exchange of participation receipts held in trust estates for Banco Kentucky stock. They were not the beneficiaries of those trusts.

It is alleged that the Banco Kentucky was organized to enable it to do business prohibited to national banks. Even if the organization of a corporation for such a purpose were illegal, a matter not necessary to consider or discuss here, appellants did not exchange their participation receipts for stock in that company. After its organization they owned the same interests in the trust estate held by the trustees that they held before its organization. The trustees did not, and could not, exchange the participation receipts held by any person for Banco Kentucky stock. They did advise the holders of such receipts to make the exchange, but appellants did not take this advice. Both before and after the organization of Banco Kentucky appellants owned beneficial interests in the bank and trust company and not in Banco Kentucky. It is, therefore, immaterial to them whether the formation of the latter company was to enable it to do business not open to a national bank, or whether such purpose was illegal.

Next it is urged that the trust agreement of April 22, 1927, provided that "the trustees shall have power to purchase all or part of the stock of any other corporation of similar character and engaged in a like or similar business, but only with the written consent of the advisory committee, as to terms, price and conditions of purchase," and that the Banco Kentucky was also given power to purchase the stock of such institutions, and that the defendants thus aided in the creation of a competitor of the trustees in the purchase of such stocks, and, for that reason, were not faithful to their trust. But there is no allegation of any fact showing that any loss was thus occasioned to the trust estate or to appellants. It is not alleged that the trust estate could have made a profit out of any such purchase or that any gain accrued to Banco Kentucky on any purchase made by it.

We come now to consider the question of liability herein because of the alleged making of inadequately secured and excessive loans by the bank and trust company. It is charged that the defendants permitted these to be made. As trustees and advisory committee, under the agreement of April 22, 1927, they had no authority to make any loan on behalf of either the bank or the trust company. The same individuals who were trustees and members of the advisory committee were the directors of the bank and trust company, and such loans as were made by them were made in their capacities as such directors. If they acted negligently or with willful disregard of their duties in making the alleged loans, and the bank or trust company suffered loss thereby, there may have been liability upon their part, but the liability was to the bank or trust company that sustained the loss. If it were now a going concern, the cause of action would be in it. It is alleged that both of them closed their doors. Presumably, although it is not so alleged, receivers are now in charge of their affairs. If there are such receivers, the right to prosecute actions against the defendants on the grounds now under consideration is in those receivers, and, if there are no receivers, it is in the corporations themselves. A stockholder cannot maintain such an action without alleging that a demand has been made upon the corporations or receivers, as the case may be, to bring the suit and they refused so to do. In such a state of case the corporations, or their receivers, must be made defendants.

This seems to be settled by the recent opinion of this court in Scholl v. Allen, 237 Ky. 716, 36 S. W. (2d) 353, 358. There certain stockholders of Banco Kentucky sought to prosecute a suit for themselves and all other stockholders of that corporation to recover of its officers and directors $25,000,000 damages for alleged acts of negligence and mismanagement. The petition was dismissed in the lower court because there was no allegation that a demand had been made upon the receiver of Banco Kentucky to bring such suit and he had refused, and because that receiver was not made a party to the suit. In affirming the judgment below, this court said:

> "The appellants, as plaintiffs in the lower court, in their petition charge the defendants with neglect of duties devolving upon them as directors

or officers in three separate corporations, namely, the National Bank of Kentucky, a national bank, the Louisville Trust Company, a Kentucky corporation, and the Banco Kentucky Company, a Delaware corporation.

"The petition charges that defendants, acting in various capacities, some as officers and some as directors of one or more of the three corporations named, committed wrongful or negligent acts causing loss or injury to the three corporations respectively, with resulting liability on the part of the defendants as such officers or directors respectively.

"This is an appeal from a judgment sustaining defendants' special demurrer to plaintiffs' petition as amended, because of defect of parties and dismissing the petition without prejudice, upon plaintiffs' declining to bring in the necessary parties.

"The plaintiffs attempt to allege on behalf of the three corporations, such causes of action as may have accrued to each of them against its directors or officers.

"The petition alleges that all three corporations are in the hands of receivers, but the petition does not allege that any demand has ever been made by the plaintiffs upon the corporation or upon the receiver to bring any action against the directors.

"The plaintiffs do not make parties to their petition, either as plaintiffs or defendants; any one of the corporations or their receivers. * * *

"The right to maintain a suit against the directors or officers of a corporation for fraudulent acts or neglect of duties resulting in damage to the corporation is a right of the corporation, and it is only when the corporation will not bring the suit that it can be brought by one or more stockholders in behalf of all.

"The suit, when brought by stockholders, is still a suit to enforce a right of the corporation and to recover a sum of money due to the corporation; and the corporation is a necesary party, in order that it may be bound by the judgment.

"If a corporation suffers a condition which results in the appointment of a receiver of all of

its assets, the right to enforce the rights of the corporation in respect to such causes of action as ·is described herein, vests in the receiver, and he is the proper party to bring the suit. A demand upon the receiver and a refusal by him to sue are prerequisites to the right of stockholders to maintain such an action, and then the receiver should properly be made a defendant to any suit by stockholders to enforce the right of ˙ the corporation. This doctrine seems to be uniformly recognized and applied.''

In Porter v. Sabin, 149 U. S. 473, 13 S. Ct. 1008, 1010, 37 L. Ed. 815, the Supreme Court said:

"The right to maintain a suit against the officers of a corporation for fraudulent misappropriation of its property is a right of the corporation, and it is only when the corporation will not bring the suit that it can be brought by one or more stockholders in behalf of all. Hawes v. Oakland, 104 U. S. 450 [26 L. Ed. 827]. The suit, when brought by stockholders, is still a suit to enforce a right of the corporation, and to recover a sum of money due to the corporation; and the corporation is a necessary party, in order that it may be bound by the judgment. Davenport v. Dows, 18 Wall. [85 U. S.] 626 [21 L. Ed. 938].''

In the suit at bar there is no allegation that any demand was ever made upon either the bank or the trust company, or the receiver of either, to bring any action against the defendants or any of them. Neither corporation nor any receiver of either is made a party. In fact it is not sought to recover anything on behalf of those corporations. The relief sought is on behalf of the holders of the participation receipts. What part of the stock of the bank and trust company is thus owned, or what part is in the hands of nondepositing stockholders is not disclosed in the petition. If there is to be a recovery because of mismanagement of the National Bank of Kentucky, it should be by it or its receiver against its directors, and such recovery would be for the benefit of all of its stockholders, and possibly its creditors, and, likewise, a recovery, if any there is to be, because of mismanagement of the Louisvile Trust Company, should be by it or its receiver, against its directors, and would be for the benefit of all its stock-·

holders, and possibly its creditors. Appellants cannot maintain such a suit against the defendants without alleging that appellants had demanded of the corporation or their receivers that suit be brought and they had refused to do so, and without making them defendants, in the suit.

In their petition the plaintiffs prayed for an accounting by the trustees. By the agreement of April 22, 1927, it became the duty of the trustees to collect and distribute the dividends that should be declared on the stocks that came into their hands as trustees. They were also authorized to purchase and sell stock in other banks and trust companies, and dispose of any moneys that thus came to their hands, as provided in that agreement, and under certain circumstances to receive and distribute other funds. In a proper proceeding any beneficiary of that trust was entitled to an accounting, as to the moneys so received by the trustees, if the trustees had failed to carry out the trust in this respect. But there is no allegation that the trustees had failed to properly account for, and pay to the parties entitled thereto, the moneys thus received by them. The whole theory of the appellants seems to be that the defendants should be required to account herein for their alleged wrongful acts hereinbefore referred to. It is alleged "that an account is necessary to determine the extent of the negligence and wrongful acts and admissions of the defendants toward such estate." Further on in the petition the appellants set out "a summary of the wrongful acts of the defendants," and nowhere is there in said summary any claim that the trustees had failed to account for all the funds that came to their hands. Therefore, in view of our holding as to the matters that are complained of, it does not appear that appellants are entitled to any accounting herein, or that they have been prejudiced by the action of the lower court in not requiring it. But if an accounting for the funds received by the trustees should be required of them it should be made in the suit brought by the receiver of Banco Kentucky to dissolve the trust. It is alleged in the petition that, in a suit brought in the Jefferson circuit court by the receiver of the Banco Kentucky, he was permitted to sue for and on behalf of all holders of participation receipts, and that a judgment was rendered therein that the trustees "be, and each of them is, now discharged as

such trustees," and that "this action is retained upon the docket for such further orders and judgments as may be necessary from time to time." When the plaintiff in that suit was permitted to prosecute it for and on behalf of all the holders of participation receipts, all such holders, including the plaintiffs, were thus brought before the court. Civ. Code Prac. sec. 25; Young v. Fitch, 182 Ky. 29, 206 S. W. 29. Manifestly, the proper place for these trustees to account for all trust funds that came to their hands, not theretofore accounted for, was in the suit brought to terminate the trust and in which they were discharged as trustees.

If the court in that case has not already rendered a judgment concluding the parties as to the state of the accounts of the trustees, the case is still upon the docket, and the court can yet determine whether the trustees have disbursed, in accordance with the trust agreement, all sums that they have received thereunder.

In Wood v. Sharp's Adm'r, 159 Ky. 46, 166 S. W. 787, 788, and in Stone v. Winn, 165 Ky. 9, 176 S. W. 933, this court quoted the applicable rule from 23 Cyc. 1170, as follows:

"If a party is brought into a case and has a fair legal opportunity to present and enforce any claim he may have in relation to the subject-matter, he must avail himself of it, and, whether an original party or an intervener, he must present his whole case, extending his claim so as to embrace everything which properly constitutes a part of his cause of action or defense. Further, a plaintiff must recover in one action all he is entitled to; if dissatisfied with the result, he cannot bring a new suit to recover something more on the same cause of action."

See, also, Hackney v. Hoover, 87 S. W. 769, 27 Ky. Law Rep. 1003; Cumberland Pipe Line Co. v. Spears, 208 Ky. 492, 271 S. W. 581; Commonwealth v. Churchill, 131 Ky. 251, 115 S. W. 189.

When the holders of the participation receipts, suing by the receiver of the Banco Kentucky, brought the action in the chancery court for the termination of the trust agreement and the discharge of the trustees, they should have asked for the distribution of any funds in the hands of the trustees. This was a claim directly

related to the subject-matter of the suit and should be determined in that suit.

We conclude that the lower court committed no prejudicial error in striking the redrawn petition from the files and dismissing the action on the appellants failing to plead further. Civ Code Prac. sec. 114; Hale v. Grogan, 99 Ky. 170, 35 S. W. 282, 18 Ky. Law Rep. 46; Brashears v. Letcher County Court, 61 S. W. 285, 22 Ky. Law Rep. 1763; Clark v. Louisville Trust Co., 229 Ky. 101, 16 S. W. (2d) 799.

The judgment below is affirmed.

Whole court sitting.

W. B. White and L. A. Faurest, Special Justices, sitting for Dietzman and Clay, JJ., who are disqualified by reason of interest or kinship.