CHESAPEAKE & OHIO RY. CO. v. HARRIS STANLEY COAL & LAND CO. et al.

No. 74.

District Court, E. D. Kentucky.

Sept. 9, 1944.

850

LeWright Browning, of Ashland, Ky., for plaintiff.

C. W. Napier and Napier & Napier, all of Hazard, Ky., for defendants.

SWINFORD, District Judge.

This is a proceeding to enjoin a threatened trespass. The case is pending on a temporary injunction and is now considered on the defendants' motion to dismiss the complaint and the plaintiff's motion for a permanent injunction.

The plaintiff, the Chesapeake and Ohio Railway Company, operates its trains over tracks adjacent to the defendants' coal lands. The defendant, Harris Stanley Coal and Land Company, owns the coal land in fee simple. The defendants, Paintsville Millers Creek Collieries and ·Alexander Cameron, are now engaged in mining the coal under a lease. Much of the coal has been removed from the mine but it is established by proof that in order to fully avail itself of the remaining merchantable coal, it is necessary to now pull the pillars remaining in the mine. It would serve no purpose to discuss the mining operation described in the proof as "pulling the pillars", other than to say that it is a recognized practice in the coal mining districts of Eastern Kentucky. The exact amount of coal contained in the pillars in question is not clear. The plaintiff's witnesses estimate from ten thousand to fifteen thousand tons. The witnesses for the defendants claim there is approximately thirty thousand tons.

The portion of the mine in question is described as "the pillars to the left of the left entry of the mine", which are beneath the mountain immediately adjacent to a portion of the plaintiff's railway track and right-of-way and running for a distance of between twelve hundred and two thousand feet.

The plaintiff's case is based upon the allegation and contention that the mining of the coal in these pillars and the pulling of these pillars will cause a subsidence and breaking of the surface of the mountain which will result in the mountain slipping or sliding onto its right-of-way, with consequent great damage to its property and possible loss of life or personal injury.

To sustain its case the plaintiff offers four experienced and reputable mining engineers. All of these witnesses have made personal examinations of the property and the operations there in connection with the mining of the coal. These witnesses, in the main, agree in their testimony and represent to the court that the removal of the pillars would result in the surface breaking and subsiding, thereby causing the mountainside to slip over the cliff onto the railway track. That this would result in interfering in the operation of the railway, would endanger life and property and would cause the railway company to sustain damages amounting to many thousands of dollars. It is further represented that the rooms along the left entry contain considerable quantities of debris and fallen materials, which would have to be removed before the pillars could be pulled and that in view of the large amount of coal that had been taken out in the mining operations, the pillars along the left entry could not now be profitably pulled or removed. There

is also testimony to the effect that at a point 600 feet south of the place here involved, there has been a subsidence of the mountainside onto the railway track.

The defendants offer four mining engineers, who testified as to their familiarity with the property; that they have examined it with the view of determining the feasibility and danger, if any, of pulling the pillars and that in their opinion, coal in these pillars at the left entry could be profitably mined, without danger of the mountainside slipping or sliding onto the railway right-of-way.

In addition to the oral testimony offered, there has been filed quite a number of exhibits which have been of value in my study of this case. These exhibits, consisting of maps and photographs, give a most accurate picture of the location and topography of the site in question. While many other facts and circumstances are produced in the rather voluminous transcript of the evidence, I believe the summation I have given is sufficient for a determination of the points involved.

The plaintiff here is asking the court to exercise one of its most extraordinary equitable powers. That is, to enjoin a person from the free use of his property. While courts of equity have, on occasion, seen fit to go to this extreme, such instances, as revealed by the reported cases, are rare. Where such powers have been exercised, it is only after the court has carefully considered the character and extent of the injury alleged, whether it is irremediable in its nature, whether an action at law would afford adequate remedy, whether the parties are able to respond for the damages resulting from the injury, and other considerations which ordinarily govern a court of equity in the exercise of its preventive processes of injunction. Atchison v. Peterson, 20 Wall. 507, 22 L.Ed. 414.

Where, however, the plaintiff alleges a grievance affecting the enjoyment and value of his property rights, he has a clear right to apply for preventive relief. Arizona Copper Co. v. Gillespie, 230 U.S. 46, 33 S.Ct. 1004, 57 L.Ed. 1384.

On a motion to dismiss it must be borne in mind that the allegations of the complaint are true. The court must accept this without further light; without the benefit of an answer or testimony. From the record before me I must conclude that the complaint properly states a cause of action and that the defendants' motion to dismiss should be overruled.

We now proceed to the consideration of the case as it affects the motion for an injunction in the light of the record pertinent to that single issue. Like most cases in which an injunction is sought precedent has little value. The plaintiff is seeking to invoke the extraordinary powers of the court to remedy a particular condition, peculiar to itself. The court, taking all the facts into consideration, must balance the equities and in its judicial discretion, do justice between the parties. The cases which present the nearest analogy to the facts in the case at bar and the most applicable, are cases involving the enjoining of a nuisance. These cases seek to prevent the free use of individual property because it is destructive or injurious to the property of others. The rule of reason to be applied in such cases is well expressed in the language of the opinion in the case, Mountain Copper Co., Ltd., v. United States, 9 Cir., 142 F. 625, 640, "Indeed, that the comparative convenience or inconvenience to the parties from the granting or withholding the injunction sought should be considered, and that none should be granted whenever it would operate oppressively or inequitably, or contrary to the real justice of the case, is the well-established doctrine, and we need hardly multiply authorities to that effect." However, it would serve no good purpose to enter into an academic discussion of the law of injunctions in such cases. It is well understood and easily ascertainable from the text-books and numerous reported cases.

There is a fundamental rule of law that an individual has a right to use his property as he sees fit without interference from his neighbors. So long as his exercise of this right is reasonable and without negligence on the owner's part, if injury result to adjoining land by such use, it is damnum absque injuria. The converse of this rule is equally sound. That is, if a person uses his land in a negligent or unskillful manner, or the use to which it is put is unreasonable or unnatural, and damage to adjoining landowners results, there is liability for the damage. Chesapeake & O. R. Co. v. Weddington, 231 Ky. 745, 22 S.W.2d 131.

There is, however, a well-recognized exception to this rule to the effect that one must so use his own rights as not to infringe

upon the rights of another. This is an old and established doctrine of equity and is identified by the ancient maxim of jurisprudence, "sic utere tuo ut alienum non lædas".

In the case of Sussex Land & Live Stock Co. v. Midwest Refining Co., 10 Cir., 294 F. 597, 602, 34 A.L.R. 249, the defendant claimed that the legal use of land by the owner is subject to and limited by the rights of other property owners to develop the natural resources of their lands in a lawful and prudent manner. Commenting upon this position taken by the defendant there, as here, the court in its opinion said: "This contention means and is intended to mean that a land owner has a legal right to develop the natural resources of his land without liability for damage caused to other land owners thereby, provided he pursues this development in a manner to cause as little damage as possible. We think it clear either that such statement of the rule is too broad or that the application thereof is limited by certain practical and legal considerations. It has been often stated that where the use of land affects others, the use must be 'reasonable' to escape liability for resultant damage to others. What is 'reasonable' depends upon a variety of considerations and circumstances. It is an elastic term which is of uncertain value in a definition. It has been said that 'reasonable,' as here used, means with 'regard to all the interest affected, his own and his neighbor's and also having in view public policy.' 1 C.J. 1203, note 2."

 While it is true that the plaintiff is entitled to the protection of a court of equity even at the expense of the defendants' whole business enterprise, it is needless to emphasize that such a ruling by a court of equity is only proper in a most extreme case and even that case must be established by positive proof of the highest character. The following language from 32 C.J. 77, has been approved by the Kentucky Court of Appeals in Brandenburg v. Petroleum Exploration et al., 218 Ky. 557, 291 S.W. 757, 760: "Subject to one well-established exception, relating to suits to enjoin breach of restrictive covenants as to the use of land, and except in cases controlled by positive statutory enactments, the general rule is, that on application for an injunction the court will in the exercise of the wide discretion with which it is vested take into consideration the relative inconvenience or injury which the parties will sustain by the granting or refusal of the application for an injunction, unless in cases where the wrong complained of is so unwarranted and unprovoked as properly to deprive the wrongdoer of the benefit of any consideration as to its injurious consequences. The rule is laid down in a large number of decisions that when the issuance of an injunction will cause great injury to defendant, and will confer no benefit or very little benefit in comparison upon complainant, it is proper to refuse the injunction, especially where the right is doubtful, or where money damages will compensate plaintiff, or where the wrong may be otherwise redressed, or where complainant can at comparatively slight cost protect himself."

The same opinion also quotes from the earlier Kentucky case of Herr v. Central Kentucky Lunatic Asylum, 110 Ky. 282, 61 S.W. 283: "An injunction ought not to be granted where the benefit secured by it to the party applying therefor is comparatively small, while it will operate oppressively and to the great annoyance and injury of the other party and to the public, unless the wrong complained of was so wanton and unprovoked as to properly deprive the wrongdoer of all consideration for its injurious consequence."

I think the present case might be determined by testing the facts by the rule quoted above from Corpus Juris.

 I have examined carefully all the cases which were available to me cited by counsel both for the plaintiff and the defendants. The Kentucky cases are, without exceptions, actions to recover damages where the injunctive relief is incidental or proceedings to enjoin a nuisance or trespass that has already occurred and is recurring or is threatening to recur. None of these conditions appear in the instant case and I feel that, by the rules of equity and in the light of the authorities which I have examined and with due deference to the arguments of counsel, the injunction should be denied on all of the grounds suggested by the Railway.

The primary consideration is the benefit to be derived by the plaintiff in the event the injunction is made permanent. Just what would the plaintiff gain? The plaintiff would gain nothing. Its whole case is based upon an anticipated damage or interference on which experts differ. In the next place the right is doubtful because of

a lack of evidence of the nature required to sustain a finding for such relief. The plaintiff is not suffering at present from any wrong, inconvenience or damage by the defendants' mining operation. A pulling of the pillars might cause a subsidence of the mountain or it might not. If the mountain subsides it might slip forward onto the plaintiff's right-of-way or it might slip back away from the right-of-way. The whole thing is highly speculative. So highly speculative that it does not leave the court's mind free from doubt. The engineers offered by the plaintiff are accepted as men of ability and high character. At best their testimony is only an expression of opinion, which must, of necessity, be accepted with some reservation. The defendants have introduced witnesses who, in so far as the court knows, are of equal ability and integrity and who state that it is their opinion that no damage would result to the railway. The court has some personal knowledge of the coal mining regions of Kentucky and knows that it was largely because of this coal development that the plaintiff company laid its lines into the mountains of Eastern Kentucky. The same is true of the Louisville and Nashville Railway Company and other railroads in the coal mining regions. The right-of-ways of these companies are necessarily adjacent to coal mining properties. They were built with a knowledge of the common practice of coal mining operations. It would seem now extremely unfair to deny a mining company a right to develop its leasehold because its development might interfere with the operations of the railway.

Such injunctions are denied where money damages will compensate the plaintiff. There is nothing in the record to indicate that should such damage occur, that it would be so great or excessive as to deny plaintiff full and adequate relief in an action for damages. It is true that the mountain might fall at the time a train is just at that particular point and injure or kill human beings, but for that to happen would require a coincidence of events that can hardly be raised to the status of probability. To say the most, such a happening would be a remote possibility. The property damage, if any, is not of such magnitude that it could not be speedily and adequately corrected.

The court should also consider that the wrong, if any, might otherwise be redressed and that the plaintiff with comparative slight cost can protect itself. The plaintiff here has a complete and adequate remedy at law. It may either await results and recover damages, if and when they occur or it may, at relatively small cost, purchase the leasehold or proceed to take the property by necessary legal action. I quote the following language from Harrisonville v. W. S. Dickey Clay Mfg. Co., 289 U.S. 334, 53 S.Ct. 602, 603, 77 L.Ed. 1208: "Where substantial redress can be afforded by the payment of money and issuance of an injunction would subject the defendant to grossly disproportionate hardship, equitable relief may be denied although the nuisance is indisputable. This is true even if the conflict is between interests which are primarily private."

The railway has the right to condemn land if necessary to protect its right-of-way. K.R.S. 416.010; Howard Realty Co. v. Paducah & I. R. Co., 182 Ky. 494, 206 S.W. 774; Illinois Cent. R. Co. v. Taylor & Sweeney, 165 Ky. 503, 177 S.W. 293. Since the plaintiff is a quasi public corporation, if this court now enjoins the defendants from mining their coal and thereby destroys the value of their property, it would in reality be the taking of private property for public use without compensation.

I have been cited to no case and can find none where a court of equity has gone so far in granting injunctive relief as is requested by the plaintiff here.

I must therefore conclude that the temporary injunction entered herein must be dissolved and the prayer for a permanent injunction denied.